STATE OF MINNESOTA

IN SUPREME COURT

A13-0997

Court of Appeals                                                    Lillehaug, J.
                                                  Dissenting, Page, J., Gildea, C.J.,
                                                                    Anderson, J.

State of Minnesota,

                   Respondent,

vs.                                                       Filed:  October 22, 2014
                                                    Office of Appellate Courts

Jose Arriaga Soto, Jr.,

                   Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant Polk County Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

On the current record, the district court abused its discretion by departing from the presumptive disposition under the Minnesota Sentencing Guidelines and staying the appellant's 12-year prison sentence for first-degree criminal sexual conduct.

Vacated and remanded.

1

O P I N I O N

LILLEHAUG, Justice.

In sentencing, district courts have a great deal of discretion. Rarely do we hold that it has been abused. But rarely is not never. This is such a rare case.

Appellant Jose Soto pleaded guilty to first-degree criminal sexual conduct for a violent rape. The Minnesota Sentencing Guidelines called for an executed sentence of 12 years in prison. Instead, the district court stayed Soto's prison sentence and put him on supervised probation. The State appealed. The court of appeals reversed and remanded for execution of the 12-year sentence. *State v. Soto*, No. A13-0997, 2013 WL 6570073 (Minn. App. Dec. 16, 2013). Although we reject some of the court of appeals' reasoning, we agree that the district court abused its discretion when it stayed Soto's sentence. Accordingly, we vacate and remand for resentencing and, in the district court's discretion, further fact-finding if necessary.

I.

Late one night in May 2012, M.F. left a bonfire with Soto and two of Soto's friends. They all had been drinking and went to an apartment nearby. M.F. thought they were stopping at the apartment briefly. At the apartment, one of Soto's friends continued drinking and eventually passed out. Soto and the other friend, Ismael Hernandez, began making sexual comments to M.F., touching her, and trying to lift her dress. Soto pushed M.F. into a bedroom. Hernandez followed them and shut the door.

2

According to M.F., Soto and Hernandez then took off her clothes and forced her onto the bed. One of the two held her down while the other penetrated her anally. Soto then told Hernandez to leave because M.F. "was [Soto's] for the rest of the night."

After Hernandez left, Soto penetrated M.F. vaginally and orally, slapped her face, and choked her. The sexual assault lasted about 2 hours. The next morning, M.F. went to the emergency room and reported the assault. The examining nurse observed bruises, scrapes, a swollen cheek, cut lips, and a torn anus.

The State charged Soto with one count of first-degree criminal sexual conduct. *See* Minn. Stat. § 609.342, subd. 1(e)(i) (2012). Soto agreed to plead guilty in return for the State recommending the presumptive sentence under the Minnesota Sentencing Guidelines—12 years executed, *see* Minn. Sent. Guidelines 4.B—and not seeking an aggravated departure. The State acknowledged that Soto could seek a downward departure but did not agree to acquiesce if Soto did so.

At the plea hearing, Soto did not admit to assaulting M.F. but conceded that the evidence was sufficient for a jury to find him guilty. He also claimed that he could not remember everything that had happened because he had been intoxicated. *See generally North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (concluding that the U.S. Constitution allows a court to accept a guilty plea from a defendant who claims to be innocent); *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977) (concluding that a Minnesota court can accept a guilty plea from a defendant who claims to be innocent); *State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 113-14, 110 N.W.2d 867, 872 (1961) (concluding that a Minnesota court can accept a guilty plea from a defendant who claims not to remember

3

what happened).   The district court tentatively accepted Soto's plea and scheduled a sentencing hearing, but left the record open so the State could submit evidence to support the facts in the plea.

In preparation for the sentencing hearing, an agent for Tri-County Community Corrections conducted a presentence investigation and filed a report with the district court.  Noting that Soto "has minimized his actions and blames the victim without taking any responsibility," the agent submitted a transcription of Soto's version of the incident:

> I had consensual sex with a female who was cheating on her boyfriend and to get out of it she said I raped her!  I am not a violent person and do feel as [if] the woman I had sex with is a liar and a coward and I do not deserve to be in jail for something I didn't do!

The agent concluded that Soto "is a high risk to the community" and that "[c]ommunity safety may best be served by [Soto] serving his time in the Minnesota Correctional Facility."  She recommended the presumptive 12-year sentence and suggested that Soto "would also benefit from completing a sexual abuse treatment and cognitive behavior program while incarcerated."

Soto also underwent a diagnostic assessment at the Upper Mississippi Mental Health Center.  Soto completed the Sexual Adjustment Inventory, a test that measures sexually deviant behaviors, and the results indicated that he "engages in denial and minimization of the sexual offense."  The assessor noted that Soto "did not express any remorse or regrets about the sexual offense . . . and was quick to point out that the contact was consensual and the victim made allegations against him out of fear that this would cause conflicts in her relationship."  Nonetheless, and without explanation, the assessor

4

concluded that Soto "appears to be an appropriate candidate for participation in the outpatient Sexual Abuse Treatment program." The assessor did not identify the characteristics that made Soto suitable for outpatient treatment and did not indicate that outpatient treatment was more appropriate than incarceration.

At the sentencing hearing, Soto's attorney argued for a stayed sentence and the State argued for the presumptive executed sentence. After the attorneys made their arguments, Soto personally apologized to M.F. and asked for a stayed sentence. The district court confirmed that it accepted Soto's plea, found him guilty, and convicted him. The district court sentenced Soto to 12 years in prison, but stayed the sentence and put Soto on supervised probation for 30 years.

The district court called this "the most difficult case of this nature that the Court has considered" and acknowledged that Soto had minimized his culpability and blamed M.F. According to the district court, the "sole reason" for departing from the presumptive disposition was Soto's "amenability to probation." A significant factor in the district court's conclusion that Soto was amenable to probation was the statement in the Upper Mississippi Mental Health Center's diagnostic assessment that Soto was an "appropriate candidate" for its outpatient treatment program.

Telling Soto that he would have an opportunity to correct his behavior, the district court emphasized that Soto was "only 37 years of age," that he did not have many serious crimes in his record, and that it was "primarily alcohol that night [that] was the problem." The district court also remarked that Soto's attitude in court was "largely . . . respectful" and that "this particular type of event seems largely out of character." Finally, the district

5

court noted that Soto "seem[ed] to have some family support" and that focusing on his 10-year-old son might motivate him to correct his behavior. The district court did not say anything about Soto's culpability in sexually assaulting M.F. or whether putting Soto on supervised probation would protect public safety.

The State appealed. In an unpublished opinion, the court of appeals reversed and remanded for execution of the presumptive 12-year prison sentence. *Soto*, No. A13-0997, 2013 WL 6570073, at *6. The court of appeals concluded that the district court had abused its discretion by staying Soto's sentence because probation "understate[d] the criminality of [Soto's] conduct" and "the record dictate[d] a different result." *Id.* (internal quotation marks omitted). We granted Soto's petition for review.

## II.

We "afford the trial court great discretion in the imposition of sentences" and reverse sentencing decisions only for an abuse of that discretion.[1] *State v. Spain*, 590

---

[1] The State urges us to change our approach and apply different standards of review to different parts of the district court's decision to depart. The question of the proper standard of review for sentencing departures was not raised in the court of appeals or in the petition for review, so we decline to address it. We do observe, however, that the abuse-of-discretion standard appears to be entirely consistent with the thrust of the State's argument, which is that a decision to depart from the sentencing guidelines sometimes involves questions of law, which we usually review de novo. As we have recognized, "[a] court abuses its discretion when its decision is based on an erroneous view of the law." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). Accordingly, to the extent a decision to depart turns on a question of law, reviewing the decision for an abuse of discretion already calls for resolving the legal question de novo. *See State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008); *cf. Koon v. United States*, 518 U.S. 81, 100 (1996) ("That a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion. The abuse-of-discretion standard includes

(Footnote continued on next page.)

6

N.W.2d 85, 88 (Minn. 1999).  The Minnesota Sentencing Guidelines, however, limit the sentencing court's discretion by prescribing a sentence or range of sentences that is "presumed to be appropriate."  Minn. Sent. Guidelines 2.D.1.  A sentencing court "must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances" that distinguish a case and overcome the presumption in favor of the guidelines sentence.  *Id.*; *see also id.* cmt. 2.D.103. Accordingly, a sentencing court can exercise its discretion to depart from the guidelines "*only if* aggravating or mitigating circumstances are present," *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989), and those circumstances provide a "substantial[] and compelling" reason not to impose a guidelines sentence, Minn. Sent. Guidelines 2.D.1.  Conversely, a departure is an abuse of discretion if the court's reasons are " 'improper or insufficient' " and there is " 'insufficient evidence of record to justify the departure.' "  *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn. 2002) (quoting *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985)).

A.

The Sentencing Guidelines contain a "nonexclusive list" of mitigating circumstances that can justify a downward departure—that is, a reduction in the severity of a sentence.  Minn. Sent. Guidelines 2.D.3.a.  In this case, the district court's "sole reason" for staying Soto's sentence was Soto's "amenability to probation," which is not

(Footnote continued from previous page.)
review to determine that the discretion was not guided by erroneous legal conclusions." (citation omitted)).

7

on the list. *Id.* We note at the outset that Soto's mere "amenability to probation," as articulated by the district court, does not rise to the level of what we have previously held to justify a departure from the guidelines. To be sure, we have held that "a defendant's *particular* amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (emphasis added); *see also State v. Wright*, 310 N.W.2d 461, 462 (Minn. 1981). But we have never said that merely being amenable to probation—as opposed to being *particularly* amenable to probation—can justify staying a presumptively executed sentence. *Cf., e.g.*, *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) ("particular amenability to probation"); *State v. King*, 337 N.W.2d 674, 675 (Minn. 1983) ("particularly amenable to treatment in a probationary setting"); *Trog*, 323 N.W.2d at 31 ("particular amenability to individualized treatment in a probationary setting"); *Wright*, 310 N.W.2d at 462 ("particularly unamenable to incarceration and particularly amenable to individualized treatment in a probationary setting").

Our consistent use of the words "particular" and "particularly" in this context is not accidental. "Particular" means "exceptional" or "[d]istinctive among others of the same group," and "particularly" means "especially" or "specifically." *The American Heritage Dictionary of the English Language* 1285-86 (5th ed. 2011); *cf. Tucker v. State*, 799 N.W.2d 583, 586-87 (Minn. 2011) (relying on the word "particular" to conclude that the aggravating factor of "particular cruelty" toward the victim means cruelty "of a kind not usually associated with the commission of the offense in question" (citation omitted) (internal quotation marks omitted)). By requiring a defendant to be *particularly*

8

amenable to probation, therefore, we ensure that the defendant's amenability to probation distinguishes the defendant from most others and truly presents the "substantial[] and compelling circumstances" that are necessary to justify a departure. *See* Minn. Sent. Guidelines 2.D.1; *see also id.* 1.A.5; *State v. Misquadace*, 644 N.W.2d 65, 72 (Minn. 2002) ("[A]ll departures from the Minnesota Sentencing Guidelines must be supported by substantial and compelling circumstances . . . ."). At the same time, insisting on particular amenability to probation limits the number of departures and thus fosters uniformity in sentencing, which is a primary purpose of the Sentencing Guidelines. *See* Minn. Sent. Guidelines 1.A; *id.* cmt. 2.D.301 ("The factors [justifying departures] are intended to describe specific situations involving a small number of cases. The Commission rejects factors that are general in nature, and that could apply to large numbers of cases . . . ."); *Misquadace*, 644 N.W.2d at 68; *see also Spain*, 590 N.W.2d at 88 ("The purposes of the sentencing guidelines will not be served if the trial courts generally fail to apply the presumptive sentences found in the guidelines.").

B.

Having confirmed that when we say *particularly* amenable to probation, we mean just that, we turn to consider whether the record in this case justified staying Soto's presumptively executed sentence.

1.

One of the district court's "primary reasons" for deciding that Soto was amenable to probation was the statement in the diagnostic assessment from the Upper Mississippi Mental Health Center that Soto was an "appropriate candidate" for its outpatient

treatment. We recognize that such assessments, like presentence investigations, can contain useful information for determining whether a defendant is particularly amenable to probation. *See, e.g.*, *State v. Park*, 305 N.W.2d 775, 776 (Minn. 1981). But the "mere fact" that the person who prepared a report for the district court reached a certain conclusion "does not necessarily justify departing" from the presumptive disposition under the guidelines. *Id.*

What is more, the diagnostic assessment did not actually recommend probation for Soto. Indeed, the assessment did not draw any conclusions about whether it would be better for Soto to receive treatment while on probation than while incarcerated, or compare Soto's amenability to probation to that of others convicted of sexual assault. Rather, as the court of appeals observed, the assessment "said only that [Soto] would be an appropriate candidate for treatment, not that such treatment would be best or even appropriately delivered in a probationary setting." *Soto*, No. A13-0997, 2013 WL 6570073, at *6. In other words, while the statement in the diagnostic assessment provided some support for the district court's decision to depart, it was not sufficient to justify the departure. There is a large and crucial step missing between saying that Soto is an appropriate candidate for outpatient treatment and concluding that he is "*particularly* amenable to individualized treatment in a probationary setting," *Trog*, 323 N.W.2d at 31 (emphasis added).

2.

We have recognized several other factors that can be relevant to determining if a defendant is particularly amenable to probation, including "the defendant's age, his prior

record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *Id.* Of course, these are not the only factors that can bear on a defendant's amenability to probation, and they may not all be relevant in any given case. But they provide a useful framework for approaching this issue, *cf. King*, 337 N.W.2d at 675, and appear to have informed the district court's analysis and the court of appeals' review, so we consider each in turn.

The district court supported its conclusion that Soto was amenable to probation by noting that he was "only 37 years of age." The court of appeals disagreed that Soto's age was entitled to weight, *Soto*, No. A13-0997, 2013 WL 6570073, at *4, and the State suggests that Soto's age is irrelevant to the decision whether to depart. We decline to adopt the strong, apparently categorical, position the State has taken. As we have specifically recognized, age can be relevant to the defendant's amenability to probation and is a proper factor for the district court to consider. *See Trog*, 323 N.W.2d at 31.

But, we reject the district court's conclusion that Soto's age made him amenable to probation. The district court's only explanation for its conclusion was that Soto was young enough that he still "ha[d] an opportunity to correct [his] behavior." But if that reasoning applies to a 37-year-old, it is difficult to see which defendants it would not reach, except the most elderly or infirm. Further, at 37, Soto was older than 60 percent of defendants convicted of criminal sexual conduct in 2012 (the last year for which data are available). *See* Minn. Sentencing Guidelines Comm'n, *Sentencing Practices: Criminal Sexual Conduct Offenses Sentenced in 2012* 12 (2013). We cannot see how being "only"

37 years old could make Soto *particularly* amenable to probation relative to other defendants.

The district court also considered Soto amenable to probation because Soto "d[id]n't have a lot of serious crimes" in his record. The court of appeals held that the district court should not have considered Soto's criminal record, reasoning that the presumptive sentence under the guidelines was based in part on Soto's criminal-history score of zero, so the fact that Soto had not committed many serious crimes was already accounted for and should not be double-counted. *Soto*, No. A13-0997, 2013 WL 6570073, at *4. We agree with the court of appeals' reasoning, as far as it goes: "a defendant's clean record does not *by itself* justify mitigation of sentence." *Trog*, 323 N.W.2d at 31 (emphasis added); *accord State v. Cizl*, 304 N.W.2d 632, 634 (Minn. 1981). But the district court did not rely on Soto's record to justify mitigation "by itself." Rather, the district court considered Soto's criminal record as evidence that supported the district court's "belief that [Soto] [could] correct some of [his] behaviors." That indirect consideration was permissible, because sometimes "factors [that] may not be directly considered as reasons for departure . . . occasionally . . . bear indirectly on a determination such as whether a defendant is particularly suitable to treatment in a probationary setting." *King*, 337 N.W.2d at 675-76. Indeed, we have specifically endorsed referring to a defendant's criminal history for this purpose. *See Trog*, 323 N.W.2d at 31 (explaining that factors "including the defendant's . . . prior record . . . are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting").

12

In this case, however, we conclude that Soto's record provides very little, if any, support for the conclusion that he was particularly amenable to probation. Soto did not have a clean record; he had been convicted of two counts of possessing drug paraphernalia, two counts of driving with a suspended license, and one count of simple assault against the mother of his son. We do not see anything in Soto's criminal history that would set him apart and make him particularly amenable to probation on a conviction of first-degree sexual conduct.

The district court did not mention Soto's remorse when it decided that he was amenable to probation, but the court of appeals held that staying Soto's sentence was necessarily an abuse of discretion because "[his] lack of remorse is impossible to reconcile with a dispositional departure."[2] *Soto*, No. A13-0997, 2013 WL 6570073, at *5. The court of appeals' analysis is flawed in two respects. First, it makes remorse a necessary condition of staying a presumptively executed sentence, even though we have never said that a defendant must express remorse before a sentencing court can depart dispositionally. To the contrary, we have consistently treated a defendant's remorse as

---

[2]     The court of appeals concluded that Soto had not expressed remorse because he had not admitted sexually assaulting M.F. when he pleaded guilty and had not taken responsibility for the crime during the presentence investigation or diagnostic assessment. *Soto*, No. A13-0997, 2013 WL 6570073, at *3, *5. Because the court of appeals' decision was based in part on Soto's continued denials of responsibility after pleading guilty and was not based solely on the nature of his plea, this case does not present the question of whether it would be constitutional to preclude a defendant who pleads guilty while claiming to be innocent or to not remember what happened—and thus does not show remorse while pleading—from receiving a downward dispositional departure. *Cf. Alford*, 400 U.S. at 38 n.11 (noting that under the U.S. Constitution "the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence").

just one of several "[f]actors a court *can* consider" when determining whether the defendant is particularly amenable to probation, not as a strict prerequisite. *Bertsch*, 707 N.W.2d at 668 (emphasis added); *accord, e.g.*, *Trog*, 323 N.W.2d at 31. Second, even if an expression of remorse were a necessary condition, Soto did in fact express remorse at the sentencing hearing.

The State acknowledges Soto's apology, but argues that "[b]rutally raping a person, assaulting them, degrading them, and then calling them 'a liar and a coward' is not accepting responsibility or showing remorse, even if the words 'apology' and 'sorry' are uttered at the time of sentencing." The State's position seems to be that the brutality of the crime and Soto's repeated denials of responsibility entirely negate his later apology. The State is incorrect, although whether Soto's apology was genuine or should be given much weight were matters for the district court to decide. In any event, the district court's decision not to mention Soto's apology suggests that, appropriately, it did not give the apology much, if any, weight in concluding that Soto was amenable to probation.

The district court also did not mention whether Soto had cooperated with the police. Soto pleaded guilty in exchange for the State not seeking an upward departure. We conclude that on this record Soto's bargained-for guilty plea, by itself, provides no support for concluding that he was particularly amenable to probation. *Cf. Misquadace*, 644 N.W.2d at 72 ("[A] plea agreement—standing alone—is not a sufficient basis to depart from the sentencing guidelines.").

14

The district court did note that "[Soto's] attitude when [he] presented himself before the Court ha[d] largely been respectful," but the court of appeals suggested that this factor, standing alone, did not support the departure, *see Soto*, No. A13-0997, 2013 WL 6570073, at *5. We have specifically recognized that a defendant's "attitude while in court" can be relevant to the defendant's amenability to probation, *Trog*, 323 N.W.2d at 31, so it was a proper factor for the district court to consider. But a respectful attitude in court, in this context, is far outweighed by the other relevant considerations.

Finally, the district court found that Soto "seem[ed] to have some family support" and suggested that thinking about his son might help Soto correct his behavior. The court of appeals, based on its own review of the record, concluded that the support from Soto's family did not make him amenable to probation. *Soto*, No. A13-0997, 2013 WL 6570073, at *5. On the record before us, we cannot reject the district court's determination that Soto had "some family support." The court of appeals also held that Soto's status as a father was a "social or economic factor" that the Sentencing Guidelines prohibited the district court from considering, *see* Minn. Sent. Guidelines 2.D.2.d. *Soto*, No. A13-0997, 2013 WL 6570073, at *5. The courts of appeals' holding, again, is inconsistent with our recognition that facts that cannot themselves justify a departure can be relevant to determining whether a defendant is particularly amenable to probation. *See King*, 337 N.W.2d at 675-76.

In sum, a few of the factors that we have recognized as potentially relevant might suggest that Soto could be amenable to probation. But those factors, individually and

15

collectively, provide very little support for the further conclusion that Soto had any *particular* amenability to probation relative to other defendants.

C.

We now reach the ultimate issue in this case:  whether the district court abused its discretion by departing from the Sentencing Guidelines and staying Soto's sentence.  The use of an abuse-of-discretion standard in our review of sentencing decisions, while deferential, "is not a limitless grant of power to the trial court." *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999).  Indeed, although we "afford the trial court great discretion" over decisions to depart, *Spain*, 590 N.W.2d at 88, we have express statutory authority to "review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court," Minn. Stat. § 244.11, subd. 2(b) (2012).

For example, we have overturned a district court's decision to impose concurrent rather than consecutive sentences for multiple counts of first-degree murder involving multiple victims because running the sentences concurrently "understate[d] [the defendant's] criminality and d[id] not comport with sentences imposed on other offenders for similar offenses." *Warren*, 592 N.W.2d at 452; *see also* Minn. Stat. § 609.15, subd. 1(a) (2012) (granting the sentencing court discretion to decide whether certain sentences should run concurrently or consecutively).  Similarly, we have concluded that a district court abused its discretion by departing from the Sentencing Guidelines when the departure resulted in a sentence that was "disproportional to the severity of the offense of

16

conviction and the extent of the offender's criminal history as aggravated by the circumstances of the offense." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981); *accord Spain*, 590 N.W.2d at 89-90. *See generally* Minn. Sent. Guidelines 1.A (stating that "[one] purpose of the Sentencing Guidelines is to . . . ensure that the sanctions imposed for felony convictions are proportional to the severity of the conviction offense").

Applying those principles to the current record in this case, we conclude that the district court abused its discretion in this case of first-degree criminal sexual conduct. Soto committed a forcible and violent assault against an intoxicated and thus particularly vulnerable person. The assault lasted approximately 2 hours and the victim was repeatedly subjected to multiple penetrations by two men. Soto slapped the victim's face, choked her, and caused several injuries. The Legislature and the Sentencing Guidelines Commission have determined that a sentence of 12 years in prison is "presumed to be appropriate" for someone with Soto's criminal history who commits such a crime. Minn. Sent. Guidelines 2.D.1; 4.B. *But cf. id.* 2.D.3.b(1) (listing particular vulnerability of the victim as an aggravating factor that can justify a more severe sentence); *State v. Van Gorden*, 326 N.W.2d 633, 634-35 (Minn. 1982) (recognizing that subjecting a victim to multiple forms of sexual penetration can be an aggravating factor). Given the brutality of the crime and the absence in the record of any "substantial and compelling" circumstances that distinguish Soto from other defendants, a sentence of supervised probation was not proportional to the severity of his offense. Minn. Sent. Guidelines 1.A.2, .5.

We note in particular that the record contains no findings regarding either Soto's culpability in the assault or whether public safety would be served by placing Soto on supervised probation. Although we have not always addressed these factors before affirming a decision to depart based on a defendant's particular amenability to probation, *see, e.g.*, *King*, 337 N.W.2d at 675, we have repeatedly suggested that they can be relevant to determining whether a decision to stay a presumptively executed sentence was an abuse of discretion.

For example, in our first case addressing a defendant's particular amenability to probation, the district court had found that the defendant "does not seem to be a menace as long as he will receive the type of outpatient treatment which will be structured for him." *Wright*, 310 N.W.2d at 462. In upholding the decision to depart, we acknowledged that the defendant "may well present a danger to the public safety if he is not supervised," but concluded that the district court's determination that putting him on probation increased "the chance . . . that society's interests will be safeguarded" was supported by the record. *Id.* at 462-63. In another case, in which we affirmed the district court's decision to stay two presumably executed sentences, we mentioned the district court's findings that one defendant played a passive role in the underlying crimes, did not seriously injure anyone, and was unlikely to reoffend, and that the other defendant did not pose a threat to public safety. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983) (explaining that "when justifying only a *dispositional* departure, the trial court can focus more . . . on whether the presumptive sentence would be best . . . *for society*," in addition to other factors (second emphasis added)); *see also State v. Clemmer*, 328 N.W.2d 739,

18

739-40 (Minn. 1983) (affirming a stayed sentence for a defendant convicted of selling drugs and noting that the district court found that the defendant was not violent, sold drugs to support his family, and was seeking treatment for chemical dependency); *State v. Hennessy*, 328 N.W.2d 442, 443 (Minn. 1983) (affirming a stayed sentence and referring to the district court's conclusion that the defendant's motivation to correct his behavior, combined with the supervision provided by a structured rehabilitation program, "significantly outweighed" the risk posed by putting him on probation). There are no such findings to support the district court's decision to depart in this case.

Our determination that Soto's stayed sentence is inappropriate and disproportionate is also informed by reference to the sentences that other offenders have received for similar crimes. *See* Minn. Stat. § 244.11, subd. 2(b) (authorizing review of whether a stayed sentence is "unjustifiably disparate"); *cf., e.g.*, *Warren*, 592 N.W.2d at 451 ("We are also guided by past sentences imposed on other offenders."). In hindsight, the closest comparison is Soto's codefendant, Ismael Hernandez. Hernandez was arguably less culpable than Soto—he left the room shortly after the sexual assault began, whereas Soto continued to assault M.F. for 2 hours—and yet he received the presumptive sentence of 12 years in prison. *See State v. Hernandez*, No. A13-1181, 2014 WL 1660701, at *2 (Minn. App. Apr. 28, 2014), *rev. denied* (Minn. July 15, 2014). More generally, defendants who were convicted of first-degree criminal sexual conduct from 2005-2012 were sentenced on average to more than 144 months, or 12 years, in prison. In fact, in 2012, the year preceding Soto's conviction, the average sentence for first-degree criminal sexual conduct was 181 months, or approximately 15 years, in prison.

19

Minn. Sentencing Guidelines Comm'n, *supra*, at 33. Soto, by contrast, was sentenced to just under 1 year of incarceration, including time served, as a condition of his probation. Given the scarcity of facts in the record distinguishing Soto from other offenders, we see no substantial and compelling reason for him not to receive a reasonably commensurate sentence. *See* Minn. Sent. Guidelines 1.A ("The purpose of the Sentencing Guidelines is to establish rational and consistent sentencing standards that reduce sentencing disparity . . . .").

Accordingly, we conclude that on the current record, the district court's decision to depart from the presumptive disposition under the Sentencing Guidelines and to stay Soto's sentence was an abuse of discretion. When we first recognized that a defendant's particular amenability to probation could justify staying a presumptively executed sentence, we acknowledged the "danger that such a justification could be loosely applied." *Wright*, 310 N.W.2d at 462. That seems to be what happened here.

III.

Therefore, we conclude that this is the exceptional case in which the district court abused its discretion in departing from the Sentencing Guidelines. We thus vacate[3] and remand to the district court for further proceedings consistent with this opinion. The district court may, in its discretion, conduct additional fact-finding on whether a

---

[3] The court of appeals reversed Soto's sentence and instructed the district court to impose the presumptive sentence on remand. Because we allow the district court to conduct further fact-finding before resentencing Soto, if it sees fit, we vacate rather than affirm the court of appeals' judgment.

dispositional departure is justified or execute the presumptive sentence under the Sentencing Guidelines.

Vacated and remanded.

PAGE, Justice (dissenting).

I disagree with the court that the trial court abused its discretion by departing from the presumptive sentence under the Minnesota Sentencing Guidelines and staying appellant's 12-year prison sentence for first-degree criminal sexual conduct.

"We afford the trial court great discretion in the imposition of sentences and we cannot simply substitute our judgment for that of the trial court." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999). While a court may depart from the Minnesota Sentencing Guidelines "only when substantial and compelling circumstances are present," *Taylor v. State*, 670 N.W.2d 584, 587 (Minn. 2003) (citing Minnesota Sentencing Guidelines II.D), "[a] [trial] court's decision to depart from the sentencing guidelines is within that court's discretion, and will not be disturbed absent an abuse of discretion." *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002) (citing *State v. Schmit*, 601 N.W.2d 896, 898 (Minn. 1999)). A trial court's departure constitutes an abuse of discretion if " 'the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure.' " *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn. 2002) (quoting *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985)). Here, the reasons given by the trial court for its departure are neither improper nor inadequate and there is sufficient evidence in the record to justify the departure.

We have previously held that "a defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence." *State v. Trog*, 323 N.W.2d 28,

31 (Minn. 1982); *see also State v. Wright*, 310 N.W.2d 461, 462-63 (Minn. 1981). In this case, the trial court's "sole reason" for departing from the presumptive disposition was Soto's "amenability to probation." The court asserts that "Soto's mere 'amenability to probation,' as articulated by the [trial] court, does not rise to the level of what we have previously held to justify a departure from the guidelines"—namely, *particular* amenability to probation. It should be noted here that we have not required a trial court to specifically state that a defendant is *particularly* amenable to probation in order to justify departure. *See, e.g., State v. Hennessy*, 328 N.W.2d 442, 443 (Minn. 1983) (affirming the trial court's stay of execution of the defendant's presumptive sentence, notwithstanding the fact that "[t]he sentencing judge did not use the language that we used in *Trog* and *Wright*" regarding particular amenability to probation); *State v. King*, 337 N.W.2d 674, 675 (Minn. 1983) ("Although the trial court did not use the language of these cases, the court apparently was relying on the approach of the cases."). In any event, neither our precedent nor the court actually suggest that amenability to probation was an improper reason for the trial court to depart from the presumptive disposition.

The court also does not suggest that the factors considered by the trial court in assessing Soto's amenability to probation were impermissible or irrelevant. A significant factor in the trial court's determination that Soto was amenable to probation was the diagnostic assessment from the Upper Mississippi Mental Health Center. The court recognizes that "such assessments, like presentence investigations, can contain useful information for determining whether a defendant is particularly amenable to probation." Moreover, the court acknowledges that the assessment's recommendation that Soto was

D-2

an "appropriate candidate" for outpatient treatment provided "some support" for the trial court's decision to depart from the presumptive disposition, even if the recommendation was not sufficient in itself to support departure.

The trial court also considered Soto's age, criminal history, attitude while in court, and family support. As we previously recognized in *Trog*, and as the court recognizes here, such factors are relevant to a defendant's amenability to probation. 323 N.W.2d at 31 ("Numerous factors, including the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting."). The court acknowledges that the trial court did not improperly rely on Soto's criminal record to justify mitigation "by itself," instead considering Soto's record "as evidence that supported the district court's 'belief that [Soto] [could] correct some of [his] behaviors.' " Similarly, the court recognizes that a defendant's attitude in court and status as a father can properly be considered in the context of determining amenability to probation. The court also determines that, "on the record before us, we cannot reject the [trial] court's determination that Soto had 'some family support.' "

In sum, the trial court relied on factors that had a basis in the record and that are recognized by this court as permissible, "potentially relevant" considerations in determining that Soto was sufficiently amenable to probation to justify a dispositional departure. The fact that members of our court would have placed different weight on these factors individually or collectively, and would have considered additional factors

previously deemed relevant but not required,[1] does not warrant a determination that the trial court abused the broad discretion granted to it in imposing sentences.  While another trial court or the members of our court might have arrived at a different conclusion, that alone does not make this situation the " 'rare case' warranting our intervention with the [trial] court's discretion."  *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006).  In effect, here, the court improperly "substitute[s] [its] own judgment for that of the trial court."  *Spain*, 590 N.W.2d at 88.

For these reasons, I respectfully dissent.


GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Page.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Page.

---

[1]  In assessing whether the trial court abused its discretion by departing from the guidelines, the court "note[s] in particular that the record contains no findings regarding either Soto's culpability in the assault or whether public safety would be served by putting Soto on supervised probation."  As the court recognizes, we have not previously *required* that a trial court address these factors in determining whether a dispositional departure is justified, but have only indicated that such factors are relevant considerations.  *See, e.g., State v. Heywood,* 338 N.W.2d 243, 244 (Minn. 1983) ("[W]hen justifying only a *dispositional* departure, the trial court *can* focus more on the defendant as an individual and on whether the presumptive sentence would be best for him and for society." (second emphasis added)).