*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1451**

State of Minnesota,
Appellant,

vs.

Antonio Freeman,
Respondent.

**Filed February 1, 2016
Affirmed
Stauber, Judge
Concurring specially, Randall, Judge**[*]

Ramsey County District Court
File No. 62-CR-15-391

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant State Public Defender, St. Paul, Minnesota (for respondent)

        Considered and decided by Cleary, Presiding Judge; Stauber, Judge; and Randall, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**STAUBER**, Judge

Appellant State of Minnesota argues that the district court abused its discretion by sentencing respondent to a downward dispositional departure that included probation without first finding that respondent was "particularly" amenable to probation. We affirm.

## FACTS

St. Paul police responded to a "shots-fired" call at a gas station during the late afternoon of December 31, 2014. A surveillance video from the gas station showed respondent Antonio Freeman being shot at from the corner of the gas station as he returned to his vehicle from inside the station. Freeman walked toward the shooter and returned fire, then got in his vehicle and shot toward the gas station a few more times before driving off. At the time of the offense, Freeman was 23 years old and known to police as a suspected gang member. He was charged with two felonies, thus subject to presumptive 60-month executed sentences: drive-by discharge of a firearm for the benefit of a gang and reckless discharge of a firearm at an occupied building.

Freeman pleaded guilty to both charges; his plea petition stated that he intended to move for a downward dispositional departure at sentencing. During Freeman's presentence investigation (PSI), he explained that the offenses occurred in response to someone shooting at him. He also expressed remorse, stating that "he knows what he did was wrong and is glad no one got hurt." Freeman moved for a downward dispositional departure based on his amenability to probation, as demonstrated by his "acceptance of

responsibility early in the process, lack of a criminal record, the cooperation and attitude he has displayed, and his support network."

At the sentencing hearing, Freeman's attorney informed the district court that Freeman had moved to a suburban residence to avoid bad influences and was attending school. The attorney argued for imposition of restrictive probation terms recently recommended for young offenders convicted of gang-related charges in Ramsey County. Freeman apologized again at sentencing, saying: "I'd like to apologize for the decision I made. I've been trying to change my life and be law-abiding, working trying to get a job, moved away from the city, trying to change my life and hope you all can see the good in me." The district court imposed a stayed 60-month sentence and placed Freeman on probation, the terms of which included a 365-day jail term and other rigorous measures.[1] The district court's given reason for granting Freeman's motion for a dispositional departure was that he was "amenable to probation." The district court also mentioned Freeman's youth, demeanor, remorse, and lack of a criminal-history score. The state appeals.

### D E C I S I O N

The district court has broad discretion at sentencing, and an appellate court "generally will not interfere with the exercise of that discretion." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). Sentencing departures must be based on "substantial and

---

[1] Key among Freeman's special probationary requirements are that he have no contact with gang members, maintain a 7 p.m. curfew for 120 days, report any police contact within 24 hours, and prove that he has engaged in 40-hours per week of "constructive activity" such as attending school or work.

compelling circumstances." Minn. Sent. Guidelines 2.D.1 (2014); *Kindem*, 313 N.W.2d at 7. "[A]s long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination," this court will "not interfere with the sentencing court's exercise of discretion." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted). Even "[i]f the reasons given [for a sentencing departure] are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed." *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985).

As support for a dispositional departure, a defendant must show "particular amenability to individualized treatment in a probationary setting." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (emphasis omitted); *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). Typically, amenability to probation is demonstrated by such factors as "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *Trog*, 323 N.W.2d at 31. Here, the district court determined that Freeman was "amenable to probation" rather than "particularly amenable to probation." The state argues that this finding is insufficient to support a dispositional departure.

In *Soto*, the Minnesota Supreme Court interpreted the "particularly amenable to probation" phrase as follows:

> Our consistent use of the words "particular" and "particularly" in this context is not accidental. "Particular" means "exceptional" or "distinctive among others of the same group," and "particularly" means "especially" or "specifically." By requiring a defendant to be *particularly*

4

amenable to probation, therefore, we ensure that the defendant's amenability to probation distinguishes the defendant from most others and truly presents the "substantial[] and compelling circumstances" that are necessary to justify a departure. At the same time, insisting on particular amenability to probation limits the number of departures and thus fosters uniformity in sentencing, which is a primary purpose of the Sentencing Guidelines.

855 N.W.2d at 309 (quotations and citations omitted).

In *Soto*, the district court relied on the defendant's age, 37, limited criminal record, consumption of alcohol before the offense, out-of-character conduct, and respectful court demeanor to support a downward dispositional departure for a conviction of first-degree criminal sexual conduct described as a "violent rape" that lasted over two hours. *Id*. at 305-307. The supreme court ruled that examination of those factors "provide[d] very little support for the . . . conclusion that Soto had any *particular* amenability to probation relative to other defendants," *id*. at 312, and concluded that the district court abused its discretion in sentencing Soto. *Id*. at 313.

In this case, the district court failed to use the word "particularly" or "particular" as a qualifier in reference to Freeman's amenability to probation. But, as compared to *Soto*, the record in this case also demonstrates a much stronger basis for finding Freeman particularly amenable to treatment. Freeman has satisfied nearly every one of the *Trog* factors. He has recently reached the age of majority, has no prior record other than an underage-drinking-and-driving offense, expressed remorse, apparently cooperated throughout the proceedings and demonstrated a respectful attitude while in court, and has the support of his girlfriend, with whom he has an apparently stable, long-term

relationship.[2]  Examination of some of these factors is hampered to a degree by the state's refusal to order the plea hearing transcripts, which might have shed further light on Freeman's court demeanor and cooperation.  Further, the district court took into consideration the new restrictive probation policy recommended for gang-related offenses.  We conclude that the district court did not abuse its discretion by imposing a dispositional departure in this case.  *See Pegel*, 795 N.W.2d at 255 (stating that an appellate court will not reverse a sentencing decision "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination").  Although the district court failed to use the word "particularly" in its sentencing determination, the court's analysis of Freeman's amenability to probation and the underlying support for its decision fully demonstrate that Freeman meets the particularly-amenable-to-probation standard.

Finally, the state argues that the seriousness of Freeman's offense mitigates against a probationary sentence.  The Minnesota Sentencing Guidelines rank offense-severity levels in relation to criminal-history scores in determining presumptive sentences.  Minn. Sent. Guidelines 4 (2014).  Neither the guidelines nor the caselaw prohibit a sentencing departure based solely on the severity level of an offense.

**Affirmed.**

---

[2] After Freeman's mother's death, his aunt became his legal guardian.  His brother is deceased, and his younger sister lives in Chicago.

6

**RANDALL**, Judge (concurring specially).

I concur, in both the reasoning and the result. I write separately to point out that, to me, this appeal by the state is frivolous, a waste of judicial time, and a waste of taxpayers' money.

The state stridently argues for upward departures, sometimes even more than double the presumptive sentence, whenever it gets the chance. On a defendant's appeal, the state invokes "judicial discretion in sentencing" like a talisman. Here, the district court prudently ordered a dispositional departure, and now on appeal, the state stridently argues that if this departure is allowed to stand, the republic will fall.

All this over the semantics of "particular" and "particularly" modifying the phrase "amenable to probation" when it is clear from the record we have that Freeman "has satisfied nearly every one of the *Trog* factors," as noted by the majority. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982).

I also note, as the majority did, that "examination of some of these factors is hampered to a degree by the state's refusal to order the plea hearing transcripts, which might have shed further light on Freeman's court demeanor and cooperation."

This appeal should never have been brought.