*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0768**

State of Minnesota,
Respondent,

vs.

Derrick Timothy Days,
Appellant.

**Filed April 29, 2024**
**Affirmed**
**Connolly, Judge**

Olmsted County District Court
File No. 55-CR-21-3206

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Catherine Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Bratvold, Judge; and Florey, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant challenges his sentence for second-degree murder and assault, arguing that the district court abused its discretion in denying appellant's motion for a downward durational departure because his offense was significantly less serious than a typical intentional second-degree murder. We affirm.

**FACTS**

In June 2021, appellant Derrick Days and a friend, R.G., joined a dice game with a group that included T.L.B. and T.R.W. A fight broke out between R.G. and T.L.B. Appellant and T.R.W. gathered around them. T.R.W. appeared to join T.L.B. against R.G.; appellant tried to separate them. R.G. tackled T.L.B. When both were on the pavement, appellant shot T.R.W., causing him substantial bodily harm, then pulled R.G. off T.L.B. and shot T.L.B., who was still on the ground, multiple times. T.L.B. died at the scene; T.R.W. survived.

Appellant was charged with second-degree intentional murder, second-degree felony murder, second-degree assault, and possession of a firearm by an ineligible person. He agreed that he intended to kill T.L.B. when he shot him at least three times. Appellant had a criminal-history score of 5 when sentenced for the second-degree murder; his presumptive sentence was 346 to 480 months in prison. In January 2022, the state's motion to seek an aggravated sentence was granted.

2

In November 2022, appellant pleaded guilty to intentional second-degree murder and assault; the state withdrew its motion for an aggravated sentence and agreed to a sentencing cap of 426 months.

In March 2023, appellant moved for a downward durational departure to 240 months, arguing that his offense was less serious than a typical second-degree murder because the victim was the aggressor and the offense was similar to first-degree heat-of-passion manslaughter, a lesser crime. His motion for a downward durational departure was denied, and he was sentenced to the maximum agreed sentence, 426 months. He argues that the denial of his motion was an abuse of discretion.

## DECISION

We grant a district court "great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation and citations omitted). "This court will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *rev. denied* (Minn. July 20, 2010). A district court's refusal to depart from the sentencing guidelines will be reversed only in a "rare" case. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

"Although the [district court] is required to give reasons for departure [from the sentencing guidelines], an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Musse*, 981 N.W.2d

3

216, 220 (Minn. App. 2022), *rev. denied* (Minn. Dec. 28, 2022). The district court

nevertheless explained its rejection of appellant's argument.

> I do not doubt that this murder happened at a moment of strong emotion. But at the crucial moment, [appellant] already having shot and wounded [T.R.W.], when the altercation between [T.L.B. and R.G.] was for all intents and purposes over, at that moment, that's when [appellant] fired at close range at least three times into [T.L.B.]'s prone body firing to kill.
>
> . . . There was time to take another course and instead [appellant] chose to pull the trigger not once but at least three times.
>
> I am not persuaded that there were mitigating circumstances making this significantly less serious than a typical intended killing, and I will not depart on that basis.

The district court in *Musse* rejected the defendant's argument that "his offense was

significantly less serious than typical because it was 'very similar' to first-degree

manslaughter, also known as heat-of-passion manslaughter." *Id* at 221. This court

affirmed the guidelines sentence and observed:

> A heat-of-passion manslaughter occurs when one "intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances." Minn. Stat. § 609.20(1) (2020). A heat-of-passion manslaughter requires (1) that the killing be committed in the heat of passion and (2) that the passion be provoked by such words or acts of another as would provoke a person of ordinary self-control under the circumstances. The first element is subjective and the second element is objective.
>
> Although Musse acknowledges the objective component of heat of passion manslaughter . . . , he does not meaningfully argue that the objective standard was satisfied. That is, he fails to address his prolonged and disproportionate

4

response to the initial physical confrontation. Instead, he primarily relies on . . . his state of mind at the time of the crime, which address[es] only the subjective component of heat-of-passion manslaughter. For example, he argues that . . . he was in a highly emotional state at the time of the offense. But under the objective element, the adequacy of the provocation is judged from the perspective of a person of ordinary self-control under like circumstances. . . .

In sum, we fail to see how Musse's act of shooting the victim several times, walking away, and then returning to execute the victim was reasonably and objectively provoked under these facts. . . . Because Musse's claimed departure ground is based on his erroneous assertion that "the fact pattern more closely fit a heat of passion killing," it is not a valid departure ground. *See* Minn. Sent'g Guidelines 2.D.3.a(5) (2020) (requiring substantial, mitigating grounds).

*Id.* (quotations and citations omitted). Like the facts in *Musse*, the facts here show that appellant was not provoked to attack. Appellant had seen T.L.B., the victim, fight with R.G., appellant's friend, and had pulled R.G. off T.LB., who was still on the ground when appellant shot him at least three times at close range. There is no indication that any words or acts of T.L.B. while he was fighting with R.G. would have provoked a person of ordinary self-control to fire three shots into him.

Appellant argues that *Musse* is factually distinguishable because the defendant in that case left the victim after shooting him, then returned to shoot him again, while appellant had "an ongoing physical altercation" with T.L.B. But the physical altercation in this case did not involve appellant: it occurred between his friend R.G., and the victim, T.L.B., and appellant ended it by pulling R.G. off T.L.B. before he repeatedly shot T.L.B. himself.

Appellant also claims that, unlike the defendant in *Musse*, he "does not argue that his offense was a heat-of-passion killing" and therefore "does not need to prove that his actions were "'reasonably and objectively provoked.'" This argument fails for two reasons. First, the defendant in *Musse* did not argue that his offense was actually a heat-of-passion killing; he "argue[d] that his crime was significantly less serious than typical because . . . his actions were consistent with a heat-of-passion killing." *Musse*, 981 N.W.2d at 220. Second, like the defendant in *Musse*, appellant argues that, while his offense was second-degree intentional murder, he is entitled to a downward departure because the offense "shared characteristics with heat-of-passion manslaughter, a less serious crime" and "existed near the borderline" of second-degree intentional murder and heat-of-passion manslaughter." Appellant's contention that *Musse* is distinguishable is unconvincing.

Like *Musse*, "this is not a 'rare' case warranting reversal of a presumptive sentence." 981 N.W.2d at 223; *see Kindem*, 313 N.W.2d at 7.

**Affirmed.**