*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0348**

State of Minnesota,
Respondent,

vs.

Tyler James Kennedy,
Appellant.

**Filed December 29, 2025
Affirmed
Larkin, Judge**

Olmsted County District Court
File No. 55-CR-24-515

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michael T. Walters, Olmsted County Attorney, Allison A. Freese, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Eva F. Wailes, Assistant Public Defender, Sarah Brodwolf, Certified Student Attorney, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larkin, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges the district court's denial of his motion for a downward dispositional departure. We affirm.

# FACTS

In January 2024, respondent State of Minnesota charged appellant Tyler James Kennedy with felony domestic assault by strangulation and felony domestic assault. The charging document alleged that, in January 2024, police were called to a residence by a juvenile witness who reported that Kennedy, his mother's boyfriend, was hurting her. When the police arrived, an officer could hear yelling from outside the residence. And when the officer approached the door, he could hear the victim yelling "help me." The police entered the residence, saw Kennedy on top of the victim, and took him into custody.

The victim stated that Kennedy became mad and aggressive after she told him to leave. The victim said that Kennedy grabbed her head with his arm around her neck, choked her, slapped her, yelled at her, and told her that he was going to push her down the stairs. The victim also told the police that Kennedy tried to push her across the floor toward the stairs and that she was afraid for her life. The record reveals that Kennedy has a long history of controlled-substance abuse, and he was intoxicated when he assaulted the victim.

In October 2024, Kennedy pleaded guilty to felony domestic assault. In December 2024, the district court dismissed the charge of felony domestic assault by strangulation. At the plea hearing, Kennedy disputed that he choked the victim, but he admitted that he was angry with her, held her down on the ground, put his hand over her mouth, and frightened her.

Kennedy moved for a downward dispositional departure, arguing that he was particularly amenable to probation. The probation department supported Kennedy's request for a departure, but it described its support as "guarded."

2

The state opposed Kennedy's request noting that, when the domestic assault occurred, Kennedy was already on felony probation after having received a dispositional departure on his last domestic-violence-related offense—which involved the same victim as this case. The district court denied Kennedy's motion, entered judgment of conviction, and sentenced Kennedy to a presumptive sentence of 33 months in prison.

Kennedy appeals his sentence.

**DECISION**

Kennedy contends that the district court abused its discretion by denying his motion for a downward dispositional departure.

The Minnesota Sentencing Guidelines establish presumptive sentences for criminal offenses and seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2022). "Consequently, departures from the guidelines are discouraged and are intended to apply to a small number of cases." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). A district court may depart from the presumptive sentence only when there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2023).

If substantial and compelling circumstances exist, the district court has broad discretion to depart, and we generally will not interfere with the exercise of that discretion. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This court will reverse the district court's refusal to depart from the presumptive sentence only in a "rare" case. *Id.* "[A]s long as the record shows the [district] court carefully evaluated all the testimony and information

3

presented before making a determination," we will not reverse the district court's refusal to depart. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

When considering a dispositional departure, the district court focuses "more on the defendant as an individual and on whether the presumptive sentence would be best for him and for society." *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). A defendant's particular amenability to probation can justify a downward dispositional departure from a presumptive sentence. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014). The requirement of particular amenability ensures that "the defendant's amenability to probation distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure." *Id.* at 309 (quotation omitted).

Relevant factors for determining whether a defendant is particularly amenable to probation include the defendant's age, prior criminal record, remorse, cooperation, attitude in court, and support of friends and family. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). Even if there is evidence that the defendant would be particularly amenable to probation, a district court is not required to grant a dispositional departure. *State v. Olson*, 765 N.W.2d 662, 664-65 (Minn. App. 2009).

In seeking a dispositional departure, Kennedy argued that he was particularly amenable to probation based on the *Trog* factors. Kennedy acknowledged that his prior criminal record did not support a departure, but he argued that his age—thirty-four years old—supported a departure because "[h]e is still young enough to have the ability to learn new lifestyle choices, while also old enough to recognize that the life he's lived is not a life

4

he wants to continue living." Kennedy explained that the threat of prison motivated him to change his behavior.

Kennedy also argued that he showed remorse by pleading guilty, even though he disagreed that the charging document accurately described the crime. Kennedy further argued that he had cooperated throughout the case, appeared consistently, was polite during the proceedings and at the plea hearing, and voluntarily turned himself in after relapsing several weeks before sentencing. Finally, Kennedy argued that he had the support of friends and family, including his significant other—the victim in this case—and his probation officer. Kennedy explained that his significant other and probation officer are supporting him by helping him complete a dialectical behavioral therapy ("DBT") treatment program that he hopes will address both his addiction and mental-health issues.

Kennedy asserts that the district court abused its discretion in determining that there were no substantial and compelling reasons to justify a downward dispositional departure. The thrust of Kennedy's argument is that the district court "only briefly pointed to [his] failed attempts at treatment before" making its determination and that, contrary to the district court's conclusion, he is particularly amenable to probation. Kennedy also argues that his recent DBT treatment shows that he is particularly amenable to probation and that our caselaw has "recognized that specific community services tailored to the defendant's needs make the defendant more amenable to probationary rehabilitation."

To the extent that Kennedy argues that the district court failed to consider all relevant factors and failed to make adequate findings to support imposition of a presumptive sentence, the district court did not err. The record shows that the district court

considered Kennedy's individual circumstances and his amenability to probation, which were described in the relevant filings and arguments at sentencing. In considering those circumstances, the district court emphasized that Kennedy has not been underserviced and that "[m]ost everything has been tried for him." *See Pegel*, 795 N.W.2d at 255 (stating that a sentencing court does not abuse its discretion if it carefully evaluated the testimony and information presented before making its determination). Moreover, "[a]lthough the [district] court is required to give reasons for departure, an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985).

As to Kennedy's argument that he is particularly amenable to probation, the Minnesota Supreme Court's decision in *Soto* is instructive. In *Soto*, the district court determined that Soto was amenable to probation because he had been recommended as a candidate for a particular outpatient treatment program, was only thirty-seven years old, did not have a lot of serious crimes in his record, was respectful to the court, and had some family support. 855 N.W.2d at 307.

The *Soto* court reversed the district court's grant of a dispositional departure, reasoning that, although the recommendation for treatment "provided some support for the district court's decision to depart, it was not sufficient to justify the departure." *Id.* at 309-10, 314. The supreme court rejected the district court's conclusion that Soto's age weighed in favor of a departure. *Id.* at 310. And it noted that Soto's criminal record "provide[d] very little, if any, support for the conclusion that he was particularly amenable to probation" because he "did not have a clean record; he had been convicted of two counts

6

of possessing drug paraphernalia, two counts of driving with a suspended license, and one count of simple assault against the mother of his son." *Id.* at 311. Although the supreme court acknowledged that a defendant's attitude in court is a relevant consideration, the court stated that "a respectful attitude in court, in this context, is far outweighed by the other relevant considerations." *Id.* at 312. The supreme court stated that, although some factors may have suggested that Soto was amenable to probation, "those factors, individually and collectively, provide very little support for the further conclusion that Soto had any *particular* amenability to probation relative to other defendants." *Id.*

*Soto* supports the district court's decision not to grant a dispositional departure in this case. With the support of his significant other and probation officer, Kennedy had been engaged in a DBT treatment program to address his substance abuse and mental-health issues. But as the district court observed, Kennedy had not been underserviced. Kennedy had a long history of controlled-substance use, had been in the adult criminal-justice system for approximately fifteen years, had been on probation several times, and had multiple probation violations—including as recently as weeks before the underlying sentencing hearing. Furthermore, the domestic assault in this case occurred while Kennedy was intoxicated and on felony probation after receiving a downward dispositional departure for his last domestic-violence-related offense involving the same victim. While we commend Kennedy's efforts to engage in a new form of therapy to address his mental-health issues and to maintain his sobriety, the factors that were before the district court in this case, "individually and collectively, provide very little support for the further

7

conclusion that [he] had any *particular* amenability to probation relative to other defendants." *Id.*

We are not persuaded otherwise by Kennedy's argument that his recent DBT treatment shows that he is particularly amenable to probation based on caselaw recognizing that "specific community services tailored to the defendant's needs make the defendant more amenable to probationary rehabilitation." In each of the cases Kennedy cites, the district court's decision to grant a downward dispositional departure was affirmed. *State v. Hennessy*, 328 N.W.2d 442, 443 (Minn. 1983); *State v. Malinski*, 353 N.W.2d 207, 211 (Minn. App. 1984), *rev. denied* (Minn. Oct. 16, 1984); *State v. Dokken*, 487 N.W.2d 914, 919 (Minn. App. 1992), *rev. denied* (Minn. Sept. 30, 1992). Indeed, the district court has broad discretion to depart, and we generally will not interfere with the exercise of that discretion. *Kindem*, 313 N.W.2d at 7. But as we frequently state, this court will only reverse the district court's refusal to depart from the presumptive sentence in a "rare" case. *Id.* For the reasons discussed above, this is not a "rare" case in which the district court abused its discretion by imposing a presumptive sentence.

**Affirmed.**