**STATE of Minnesota, Appellant,**

v.

**Manlear PETER, Respondent.**

**No. A12–0835.**

Court of Appeals of Minnesota.

Dec. 17, 2012.

Review Denied Feb. 27, 2013.

Lori Swanson, Attorney General, St. Paul, MN, Brian J. Melton, Clay County Attorney, Jenny M. Samarzja, Assistant County Attorney, Moorhead, MN, for appellant.

David W. Merchant, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Liberia-born Manlear Peter broke into and stole cash and a computer from the

Habitat for Humanity facility in Moorhead. Aware that Peter faced deportation if he received the presumptive guidelines sentence for the burglary, the district court departed downward and imposed a lighter sentence, expressly to save Peter from federal deportation. The state appeals the sentence, urging us to hold that the district court abused its discretion by basing the downward durational departure on Peter's potential deportation and on other offender-specific circumstances. Because potential federal immigration consequences are not grounds for a downward durational departure, we reverse and remand for resentencing.

## FACTS

Manlear Peter broke into the Moorhead Habitat for Humanity facility where he previously worked. He stole cash and a portable computer. The state charged Peter with felony third-degree burglary, a violation of Minnesota Statutes section 609.582, subdivision 3 (2010), and theft, a violation of Minnesota Statutes section 609.52, subdivision 2(1) (2010). Peter pleaded guilty to third-degree burglary.

Before being sentenced, Peter moved the district court to depart downward, requesting that the court sentence him to 360 days in jail instead of the guidelines presumptive sentence of 366 days' imprisonment. He argued that if he was given the presumptive felony sentence, the federal government would likely deport him because of the effect of a felony conviction on his status as a lawful permanent resident. At the sentencing hearing, Peter added that his age, lack of criminal history, family support, and employment status are also reasons to depart downward.

The district court granted the downward departure motion and sentenced Peter to 360 days in jail. In doing so, the court expressly considered Peter's potential deportation, stating that "immigration consequences are something that the Court can take into account." The district court judge complained that in a different case involving a different defendant, "I gave him a gross misdemeanor sentence so that he could avoid being deported, and he got deported anyway."

Five days after the state filed its notice of appeal contesting the departure decision, the district court issued a "Sentencing Memorandum." In it, the district court added to its stated ground of immigration consequences, mentioning Peter's age, his family status, his lack of a felony record, and his opportunity to find meaningful employment and education. The district court stated, "The court finds that a downward dispositional departure to a gross misdemeanor is warranted apart from the immigration issue." But the memorandum did not retreat from its orally declared ground, again referring to the immigration consequence and describing it as an "additional valid reason" for the departure. It did so while acknowledging our holding that immigration consequences are not sentencing factors, as stated in *State v. Mendoza*, 638 N.W.2d 480 (Minn. App.2002), *review denied* (Minn. Apr. 16, 2002); *cf. State v. Salim*, No. C1–01–99, 2001 WL 569054 (Minn.App. May 29, 2001), *review denied* (Minn. Aug. 15, 2001), but it refused to follow that holding because it asserted that "the Court of Appeals went astray in those cases" and deemed our rationale "not logical[ ]." This appeal follows.

## ISSUE

Did the district court abuse its discretion by basing its decision to depart downward from the presumptive guidelines sentence on Peter's potential deportation by the federal government and on other offender-specific factors?

## ANALYSIS

 The state contests the district court's departure decision. A district court has broad discretion to depart from the sentencing guidelines, and we review its decision to depart for an abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). To issue a sentence that departs from the presumptive sentence of the guidelines, a district court must identify substantial and compelling reasons why the departure sentence is more appropriate than the presumptive sentence. Minn. Sent. Guidelines II.D.1 (2010); *see also Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003). Substantial and compelling circumstances are those that make the case atypical. *Taylor*, 670 N.W.2d at 587–88. We will reverse the sentence if the district court's reasons are improper or inadequate or if there is insufficient evidence to justify the departure. *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn.2002).

 The district court departed here in substantial part because it wanted to avoid the potential deportation that it understood Peter would face with the presumptive felony sentence contemplated by the guidelines. But that rationale is not available to the district court. In *State v. Mendoza*, we held that potential deportation is not a proper sentencing consideration. 638 N.W.2d at 483–84.

 The district court did not overlook or attempt to distinguish *Mendoza* factually; it expressly recognized that *Mendoza* held "that potential immigration consequences are not to be taken into consideration for sentencing purposes." But the district court chose not to follow that precedent based in part on the district court's express view that "the Court of Appeals went astray" and was "not logical[ ]" in its reasoning. The problem with the district court's approach is that "[t]he district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals." *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn.App. 2010). Astray or not, until it is nullified by other appellate caselaw or legislative action, *Mendoza* is precedential authority that binds the district court and that guides this court. The district court abused its discretion by dismissing *Mendoza*'s holding on the district court's supposition that the *Mendoza* court got it wrong.

Unlike the district court, Peter accepts *Mendoza* as authoritative, but he seeks to distinguish it. He asks us to find a material distinction between "possible deportation" and "deportability." He contends specifically that although "possible deportation" is a mere *collateral* consequence of a felony sentence that, under *Mendoza*, is not a legitimate sentencing factor, his actually becoming "deportable" under federal immigration policy is a *direct* consequence of the felony guidelines sentence and is therefore a legitimate sentencing factor here. We are not persuaded.

 Peter's argument is one of semantics rather than substance. We see no substantial difference between a sentence that makes one deportable and one that makes one subject to possible deportation. Whether or not federal statutes, regulations, policies, and procedures appear to mandate deportation in any given case arising from a particular criminal sentence, the future consequence of deportation is speculative. As we explained in *Mendoza*, "Deportation is not a direct consequence because it is not definite, immediate, or automatic; before deportation can occur, the INS must exercise its discretion to commence deportation proceedings and, prior to deportation, there are various administrative procedures which must be followed." 638 N.W.2d at 483 (quotation omitted). Those same superseding acts of

administrative discretion and procedure must occur before any actual deportation, and this is so whether one becomes deportable or one becomes possibly subject to deportation. Either way, following *Mendoza,* deportability is not a valid reason to depart from a guidelines sentence.

We observe three additional concerns that support our holding that the district court abused its discretion by relying on Peter's deportability to depart downward. The first is that the district court's rationale leads to the awkward result of treating citizen burglars more harshly than alien burglars (or treating alien burglars more favorably than citizen burglars). The approach provides only a noncitizen with an exclusive path to a sentencing departure and to be classified as a misdemeanant; an otherwise identically situated citizen would remain a felon (as the guidelines presume for anyone committing Peter's crime regardless of citizenship). We have no reason to believe that either the legislature or the sentencing commission intended this dissimilar treatment based on nationality, and allowing it might raise fundamental constitutional concerns that the parties have not discussed.

The second concern is similar to the first. Unlike the district court judge in this case, who eschewed the presumptive sentence in order to thwart a potential deportation action, some other district court judge in a different but similar case might have a different personal preference, favoring rather than opposing deportation. That judge might refuse to order a downward departure that might otherwise be warranted on slightly different facts than ours, treating the noncitizen less leniently than the circumstances justify in order to facilitate the judge's own pro-deportation preference. Either consideration for or against the noncitizen, we think, invites mischief and, at the very least, is not even implicitly contemplated by the guidelines.

The third concern is that the district court's approach focuses on the offender rather than on his offense, altering the duration of the sentence because of Peter's immigration status for reasons that have nothing to do with the manner in which he committed his crime. Requests for durational departures require the district court to consider whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). Caselaw is settled that offender-related factors do not support durational departures. *See State v. Chaklos,* 528 N.W.2d 225, 228 (Minn.1995) ("As a general rule, the *offender*-related factor of particular unamenability to treatment in a probationary setting ... may not be used to support an upward durational departure. On the other hand, *offense*-related aggravating factors may be used to support not only such a dispositional departure but, alternatively, an upward durational departure."); *State v. Cermak,* 350 N.W.2d 328, 335 (Minn.1984) (holding that likelihood of future criminal behavior is not valid reason for durational departure); *State v. Back,* 341 N.W.2d 273, 275 (Minn.1983) (holding that post-offense remorse is not appropriate factor for durational departure); *State v. Bauerly,* 520 N.W.2d 760, 762 (Minn. App.1994) (holding that age and lack of a felony record are not valid bases for durational departures), *review denied* (Minn. Oct. 27, 1994). The district court appears to have sought to avoid this limitation by calling the departure a "dispositional" departure rather than a "durational" departure. But caselaw also forecloses that characterization. *See Bauerly,* 520 N.W.2d at 762 (holding that a one-year gross misdemeanor sentence, one day less

than the presumptive year-and-a-day felony sentence, constituted a durational departure).

■ The factors that the district court added in its supplemental memorandum also identify offender-specific characteristics not relevant in durational departures. For the reasons just discussed, those additional characteristics of Peter's relative youth, his family support, his lack of a prior felony record, and his ability to obtain meaningful employment and education are not bases on which the district court could rest its downward durational departure. We conclude that the factors relied on by the district court when departing downward are improper. We therefore reverse.

## DECISION

Because the district court departed downward durationally from the presumptive sentence to avoid the possible effect of the federal government's deportation policies rather than to account for any misalignment between the criminal sentence and the criminal conduct, and because all other cited factors are offender-specific and also cannot support the durational departure, no legitimate departure basis exists. We reverse and remand for the district court to impose the presumptive sentence under the guidelines.

**Reversed and remanded.**