*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2129**

State of Minnesota,
Appellant,

vs.

Leroy Lamar Morris,
Respondent.

**Filed May 4, 2015
Reversed and remanded
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-13-5994

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Peterson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this sentencing appeal, the state challenges the district court's decision to grant respondent a downward durational departure. Because the district court's stated reasons

for the departure are improper and there is insufficient evidence in the record to justify the departure, the district court abused its discretion. We therefore reverse and remand.

**FACTS**

These facts are based primarily on the complaint. D.W. and C.B. lived in the same apartment complex. Respondent Leroy Lamar Morris was C.B.'s boyfriend and the father of C.B.'s three children, and he often stayed with C.B. and their children.

Around August 2, 2013, D.W. damaged a bike owned by Morris' child with her car, sparking a weeklong feud between the two families. On August 9, 2013, Morris entered D.W.'s apartment through a damaged door that could not be locked. Morris went to the bedroom where D.W. and her boyfriend were relaxing. Morris waved around a pistol that had a laser sight on it and threatened to kill both D.W. and her boyfriend if D.W. did not move her car. He told D.W.'s boyfriend, "I'm going to shoot your girlfriend in the motherf--king face." The parties argued and eventually went outside, where Morris broke off both side mirrors of D.W.'s car. Police arrived on the scene, and Morris fled. At the time of the incident, Morris had four prior felony convictions and was on probation.

Morris was later charged with three counts of first-degree burglary, one count of possession of a firearm by an ineligible person, and two counts of second-degree assault. Morris' defense counsel and the prosecutor eventually reached a plea agreement, and a plea hearing was held in April 2014. Under the terms of the plea agreement, Morris

agreed to enter an *Alford* plea[1] to one count of first-degree burglary and one count of possession of a firearm by an ineligible person. The prosecutor agreed to dismiss the remaining counts, but there was no agreement as to sentencing. At the plea hearing, Morris entered an *Alford* plea pursuant to the plea agreement, which the district court accepted.

A probation officer completed a presentence investigation report (PSI). As to count 4, possession of a firearm, the sentencing worksheet of the PSI indicated that the offense had a severity level of six, Morris' criminal-history score was five, and the presumptive sentence under the Minnesota Sentencing Guidelines was an executed prison term of 60 months, with a range between 60 and 61 months. As to count 1, burglary, the sentencing worksheet indicated that the offense had a severity level of eight, Morris' criminal-history score was seven, and the presumptive sentence was an executed prison term of 111 months, with a range between 95 and 132 months. The PSI recommended that the presumptive guidelines sentence be imposed on both counts.

Prior to the sentencing hearing, Morris moved for a downward sentencing departure. He made two alternative requests for relief: his first request was for a downward *dispositional* departure of a stayed sentence with a 20-year probationary period; and his second request was for a downward *durational* departure of an executed sentence totaling between 48 and 60 months. The thrust of Morris' argument in his

---

[1] A defendant who pleads guilty via an *Alford* plea maintains his innocence, but concedes that there is sufficient evidence to support a verdict of guilty. *See North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970). This procedure was adopted by the Minnesota Supreme Court in *State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977).

memorandum in support of this motion, however, was for the downward dispositional departure. He argued that: (1) he was particularly amenable to probation; (2) he recognized, accepted, and regretted his criminal past and was motivated to change; (3) a reasonable alternative to incarceration existed and was readily available; and (4) by pleading guilty and avoiding trial, he aided in the administration of justice and saved judicial resources.

A sentencing hearing was held in September 2014. In support of his motion for a downward departure, Morris' counsel emphasized Morris' commitment to helping C.B. raise their children. In addition, he argued that Morris' alleged conduct was "not inconsistent" with the conduct of people who commit "crimes of poverty," and was less serious than what was typical for a first-degree burglary. In response, the prosecutor requested a presumptive guidelines sentence, pointing out that Morris' conduct during the commission of the offense was "very serious" and "very violent," and that his conduct was out of proportion to the triggering event that happened a week before the incident. The prosecutor noted that Morris had a long history of violence, including multiple felony convictions for assault and domestic assault; he committed the current offense while on probation; and he has had multiple probation violations. Morris spoke on his own behalf, asking the district court for "one chance" and for the opportunity to keep raising his children.

The district court adjudicated Morris guilty of both offenses. On count 4, possession of a firearm, the district court sentenced him to an executed prison term of 60 months. On count 1, burglary, the district court sentenced him to a concurrent executed

4

prison term of 60 months, acknowledging that it was ordering a downward durational departure. The district court orally stated four reasons for the departure: (1) "these crimes were committed at the same time"; (2) Morris showed remorse; (3) Morris was particularly amenable to treatment; and (4) "[he pleaded] guilty before we had to go through the trial." In the sentencing departure report, the district court characterized the downward departure as "[d]ispositional." It gave three reasons for the departure in the report: "Shows remorse. Amenable to probation. Early resolution." This sentencing appeal by the state followed.

## D E C I S I O N

### I.

The state's primary argument on appeal is that the district court abused its discretion because it "stated no offense-related reasons for a [downward] durational departure." We review a district court's decision to depart from the sentencing guidelines for an abuse of discretion. *State v. Peter*, 825 N.W.2d 126, 129 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). A guidelines sentence is "presumed to be appropriate," and the district court "must" impose it unless there are "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1 (Supp. 2013); *see State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999) ("[A] sentencing court has no discretion to depart from the sentencing guidelines unless aggravating or mitigating factors are present."). Identifiable, substantial, and compelling circumstances "are those that make the case atypical." *Peter*, 825 N.W.2d at 129.

5

"Requests for durational departures require the district court to consider whether the conduct involved in the offense of conviction was *significantly* more or less serious than the typical conduct for that crime." *Id.* at 130 (emphasis added). "Caselaw is settled that offender-related factors do not support durational departures." *Id.* Thus, a district court must consider only offense-related factors, rather than offender-related factors, when deciding a request for a durational departure.

In *Williams v. State*, the Minnesota Supreme Court prospectively adopted the following general rules governing when a district court's sentencing departure may be affirmed or reversed:

1.   If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.
2.   If reasons supporting the departure are stated, [the reviewing] court will examine the record to determine if the reasons given justify the departure.
3.   If the reasons given justify the departure, the departure will be allowed.
4.   If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify [the] departure, the departure will be affirmed.
5.   If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

361 N.W.2d 840, 844 (Minn. 1985).

At the sentencing hearing, the district court orally stated four reasons for its downward durational departure: particular amenability to treatment, early resolution of the case, simultaneity of the two offenses, and remorse. In the departure report, the district court added a fifth reason: amenability to probation. None of these reasons are proper to support a downward *durational* departure.

6

First, Morris' particular amenability to treatment is an improper reason because it is an offender-related factor. *See State v. Nelson*, 329 N.W.2d 827, 829 (Minn. 1983) ("Defendant's apparent willingness to succeed in treatment is not a ground for a downward durational departure . . . ."). Second, early resolution of the case is an improper reason because it has nothing to do with the severity of the offense. As the state points out, when a defendant pleads guilty, "this event occurs subsequent to the offense." Third, the district court correctly observed that Morris was convicted of multiple current offenses, and we note that Morris was sentenced for both. *See* Minn. Stat. §§ 609.035, subd. 3, .585 (2012). But, while a conviction for two offenses that occurred simultaneously may be important for determining whether to impose consecutive or concurrent sentences, *see* Minn. Sent. Guidelines 2.F (Supp. 2013), the simultaneity of the offenses has nothing to do with the seriousness of either offense and is therefore an improper reason for a durational departure. Fourth, Morris' supposed amenability to probation is an improper reason because it is an offender-related factor. *See State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (holding that *particular* amenability to probation, rather than mere amenability to probation, "can justify staying a presumptively executed sentence," which is a dispositional departure).

The district court's finding that Morris showed remorse requires more analysis. "As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally . . . ." *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983); *see also State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (listing "the defendant's age, his prior record, his remorse, his cooperation, his attitude

7

while in court, and the support of friends and/or family" as factors "relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting").

"However, there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984). Thus, under *McGee*, lack of remorse is relevant to an upward *durational* departure only to the extent that it sheds light on the seriousness of the defendant's conduct in committing the crime. In *State v. Bauerly*, we applied this rule from *McGee* to a situation where the defendant did show remorse: "The district court properly considered [the defendant's] remorse as relating back to the seriousness of her offense, and helping to support the downward durational departure." 520 N.W.2d 760, 762–63 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994). Specifically, this court affirmed a "minimal" downward durational departure based on the defendant's remorse *and* the fact that the defendant's theft offense was "significantly less serious than the typical offense." *Id.* at 763 (quotation omitted).

Based on this record, however, we conclude that Morris' remorse is an improper reason for the downward durational departure for several reasons. First, there is no indication that his remorse related back to the seriousness of his offense of first-degree burglary. The district court did not elaborate as to how Morris "show[ed] remorse" or whether it related back, and Morris' bald assertion that, "[a]s in *Bauerly*, [Morris'] remorse shows that his conduct was less cruel or serious than typical" is unpersuasive.

8

We fail to see how Morris' remorse at the time of sentencing—after he had been charged and had pleaded guilty—renders his conduct at the time of the offense any less serious.

Second, we are unaware of any Minnesota appellate decision holding that remorse *alone* is sufficient to support a downward durational departure, and Morris has not demonstrated that any other substantial and compelling factors exist to support the departure. Third, unlike in *Bauerly*, where the downward durational departure consisted of only one day, the district court's departure in this case—from 111 months to 60 months—is hardly "minimal." *See id.* Under these circumstances, Morris' remorse does not support the downward durational departure because it does not demonstrate that his conduct "was significantly . . . less serious than the typical conduct for that crime." *See Peter*, 825 N.W.2d at 130.

According to Morris, "the sentencing court concluded that [his] conduct was less serious than that in the typical first-degree burglary case because he was remorseful for his actions." This statement mischaracterizes the record. At the sentencing hearing, the district court never stated that Morris' conduct was "less serious" than in the typical case. And, in the departure report, the district court did not indicate that the offense was less serious.

Morris also argues that his conduct was "less serious" than in the typical case because he did not enter the apartment by force and did not physically harm the victims. However, this argument is not properly before this court because he never raised it before the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court . . . .").

9

Even if we were to reach the merits of this argument, the argument would fail. If anything, Morris' conduct was *more serious* than in the typical case because his conduct involved all three of the heightened circumstances that elevate a burglary offense to the "first degree": (1) other people were in the dwelling; (2) Morris possessed a dangerous weapon; and (3) he assaulted both victims. *See* Minn. Stat. § 609.582, subd. 1(a)–(c) (2012). Any one of these three circumstances would have been sufficient for a conviction of first-degree burglary. *See id.* And, as the state points out, Morris' assumption—that a first-degree burglary involving an assault usually results in physical injury—may be incorrect. Morris' conduct during the commission of this offense was not "significantly less serious" than in the typical case.

Because the district court's stated reasons for the downward durational departure on count 1, burglary, are improper and there is insufficient evidence in the record to otherwise justify the departure, the district court abused its discretion by granting the departure. *Williams*, 361 N.W.2d at 844. We therefore reverse the 60-month sentence that the district court imposed on count 1 and remand for resentencing in a manner consistent with this opinion.

**Reversed and remanded.**