*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0841**

State of Minnesota,
Respondent,

vs.

Isaiah Triell Hall,
Appellant.

**Filed November 16, 2015
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-3230

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

In this combined direct appeal from a conviction of controlled-substance crime (third degree – sale) and appeal from a denial of postconviction relief, appellant Isaiah

Triell Hall (1) challenges the sufficiency of the evidence; (2) argues that the district court erred in allowing the state to impeach him using prior convictions; (3) claims his trial counsel was ineffective both for failing to challenge suggestive identification procedures and for failing to advocate properly at sentencing; and, (4) argues that the postconviction court erred in denying his request for an evidentiary hearing. We affirm.

## FACTS

On November 28, 2012, Minneapolis police officers conducted an undercover narcotics purchase as part of a long-term investigation into narcotics trafficking in and around Champions Bar. Five officers worked on this buy: Sergeant Sara Metcalf, and Officers Heather Young (formerly Jorges), Karina Landmesser, Mack Dominguez, and Christopher Kelley. Officers Young and Landmesser were the undercover officers. Sergeant Metcalf and Officer Dominguez were in unmarked squad cars observing the undercover officers from the street outside the bar. Officer Kelley was in a marked squad car and was assigned to pull over cars as directed by the other officers.

At trial, Officer Young stated that she encountered appellant inside Champions Bar, where he agreed to sell her crack cocaine. Appellant and Officer Young discussed completing the sale outside. As appellant led Officer Young outside, she electronically communicated appellant's description to the other team members, describing him as "a black male approximately six three, a heavier build, wearing a red and black striped jacket, a red knit cap with dreadlocks sticking out from underneath." Appellant then sold her a substance later identified by the Minnesota Bureau of Criminal Apprehension as 0.1 grams of crack cocaine, and received pre-recorded buy money in exchange for it.

Sergeant Metcalf was able to see Officer Young and appellant in the parking lot from her unmarked squad car about 150 feet away. Sergeant Metcalf observed the hand-to-hand transaction, and watched appellant get into a car afterward. She communicated the license plate number to other police officers so a traffic stop could be initiated. Officer Kelley, in his marked squad, stopped the car after it ran a red light. Officer Kelley had appellant get out of the car and stand on the curb. Sergeant Metcalf then drove by and identified appellant as the person she had observed conducting the hand-to-hand transaction with Officer Young. Officer Dominguez picked up Officers Young and Landmesser to drive them past the traffic stop location. Officer Young also positively identified appellant.

The officers did not arrest appellant that night because they hoped to preserve their long-term investigation into drug-dealing in and around Champions. As a result, the police never collected the pre-recorded buy money that was used to purchase the drugs from appellant. Although Officer Young wore a recording device, no conversation was audible because of the poor quality of the recording.

A jury convicted appellant of controlled substance crime in the third degree. Sergeant Metcalf, Officers Young, Landmesser, and Dominguez, as well as Rebecca Willis from the Bureau of Criminal Apprehension testified for the state. Appellant waived his right to testify and called no witnesses.

The district court sentenced appellant to 44 months in prison, which was the "bottom of the box" under the Minnesota Sentencing Guidelines. Appellant's trial counsel argued for a dispositional departure, urging the district court to place appellant on

3

probation. The district court noted that appellant's conviction carried a mandatory minimum sentence, which precluded a probationary sentence. Appellant directly appealed from his conviction and sentence.

Appellant also filed a petition for postconviction relief with the district court, arguing that his trial counsel was ineffective because trial counsel failed to challenge the suggestive identification procedure and argued for a dispositional, rather that durational departure. The postconviction court denied appellant's petition for relief without a hearing. Appellant also appealed the denial of his petition for postconviction relief.

**D E C I S I O N**

## I. Sufficiency of the evidence

Appellant argues that the evidence was insufficient to prove him guilty of third-degree sale of a controlled substance. On review of a sufficiency-of-the-evidence claim, we thoroughly review the record to determine whether the evidence, when viewed in a light most favorable to the conviction, is sufficient to permit the jurors to reach a guilty verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume that the jury believed evidence that supports the verdict and disbelieved conflicting evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Minn. Stat. § 152.023, subd. 1(1) (2012), provides that "[a] person is guilty of controlled substance crime in the third degree if . . . the person unlawfully sells one or more mixtures containing a narcotic drug." Minn. Stat. § 152.01, subds. 3a and 10 (2012), define cocaine as a narcotic drug. In order to prove the crime, the state must prove that appellant sold the narcotic drug that tested positive for of cocaine. Minn. Stat.

4

§ 152.023, subd. 1(1). Appellant argues that the state's evidence failed to prove beyond a reasonable doubt that he was the person who made the sale to Officer Young. He does not dispute that someone sold crack cocaine to Officer Young. The only issue in dispute at trial was identity.

At trial, Sergeant Metcalf, Officers Young, Landmesser, and Dominguez, and Rebecca Willis from the Bureau of Criminal Apprehension testified for the state. Officer Young testified that (1) she was with appellant for a substantial period of time in close proximity; (2) appellant sold her the crack cocaine; (3) she accurately described appellant over the radio during the undercover operation; and (4) she identified him as the seller both during the show-up on the night of the sale and in-court. Sergeant Metcalf testified that she observed the hand-to-hand transaction between appellant and Officer Young, and that she identified appellant as the seller during the show-up. Officer Landmesser testified that she observed the events at the bar, corroborated Officer Young's version of events, and also identified appellant as the man who sold cocaine to Officer Young. Officer Dominguez testified that Officer Young identified appellant during the show-up identification. This testimony, which the jury necessarily believed, amply supports the jury's conclusion that appellant was the person who made the sale.

Appellant also argues that the absence of other corroborating evidence makes the state's case insufficient to prove guilt beyond a reasonable doubt. He points out that the state produced no audible recording of the drug buy. But Sergeant Metcalf and Officer Young testified that recording devices used in undercover operations occasionally produce poor recordings. Appellant also argues that the police never recovered any of

5

the pre-recorded buy money. But Sergeant Metcalf explained that the team did not arrest or search appellant that night because doing so would have revealed the long-term narcotics investigation.

Appellant also argues that the police never recovered any fingerprints or DNA and failed to conduct a photographic or in-person line-up to identify appellant. But appellant cites no authority for the proposition that DNA or fingerprint evidence is necessary where the state proves identity by eyewitness testimony.

The evidence identifying appellant as the seller amply supports the jury's verdict.

## II.     Admission of prior conviction as impeachment evidence

Appellant next argues that we should reverse and remand for a new trial because the district court failed to make a ruling concerning whether the state could impeach appellant with a prior conviction if he chose to testify, and that this, in turn, chilled his right to testify in his own defense.

Generally, we review evidentiary rulings for abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). But when trial counsel fails to "seek clarification" on a matter on which the district court has "reserved its ruling," we review only for plain error. *State v. Word*, 755 N.W.2d 776, 783 (Minn. App. 2008) (citing Minn. R. Evid. 103(a), Fed. R. Evid. 103 2000 advisory comm. note, and federal decisions to support requiring counsel to renew objections when a district court reserves its ruling). Plain error requires that the appellant show "(1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002).

In response to the state's motion to impeach appellant with prior felony convictions for soliciting a juvenile and violating orders for protection, the district court stated, "The motion to impeach the defendant using his prior convictions of solicitation of a juvenile—and I believe the others were felony violation of orders for protection[.] . . . That I will reserve at this time. I need to look more into that." Then, immediately before opening statements, the district court followed-up concerning the issue, stating, "I know that I reserved the ruling, the defendant's prior convictions, and I have not made that ruling as of yet, so I will prefer to have that not be mentioned in opening." Appellant's trial counsel responded, "Oh, sure." The record does not reflect that counsel ever followed-up on the motion or that the district court ever made a final ruling on the issue. When appellant waived his right to testify in his own defense, reference was made to the possibility of his being impeached:

> DEFENSE COUNSEL: And you also understand that if you do choose to testify, as we have discussed, the State of Minnesota could seek to impeach you, make you look like you are something less than dishonest because they may bring up the fact that you have been involved with law enforcement before? Do you understand that?
> APPELLANT: Yes.

But no ruling on the issue was ever made by the district court, and there was no further definition of the state's right to "seek to impeach" appellant if he testified.

In *Word,* we held that "evidentiary objections should be renewed at trial when an in limine or other evidentiary ruling is not definitive but rather provisional or unclear." 755 N.W.2d at 783. "[A]ttorneys have an obligation to seek clarification regarding whether an in limine ruling is definitive when there is doubt on that point." *Id.*

7

Appellant should have obtained a "definitive ruling" from the district court. But he never did. Instead, appellant waived his right to testify on his behalf. Because the district court never made a final ruling on the state's motion to impeach and appellant never opened himself to impeachment by testifying, the district court did not err, much less plainly err, concerning whether appellant could be impeached by his prior convictions.

## III. Ineffective assistance of counsel

Appellant challenges the postconviction court's denial of relief, arguing that his trial counsel was ineffective by failing to (1) challenge the show-up identification and (2) argue for a durational departure at sentencing. "When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

To prevail on a claim of ineffective assistance of counsel, an appellant must show "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014) (internal quotes omitted) (noting that "counsel's performance is presumed to be reasonable"). A

reviewing court need not address both elements of the *Strickland* test if one is dispositive. *Hawes v. State*, 826 N.W.2d 775, 783 (Minn. 2013).

### A.      Failure to challenge the show-up identification

Appellant first argues that his trial counsel was ineffective for failing to challenge a suggestive pretrial identification procedure.  Appellant's principal trial tactic was to argue that this was a case of mistaken identity and that he was not the crack-cocaine seller.

### 1.      First *Strickland* element – objective standard of reasonableness

Under the first *Strickland* element, generally an appellate court "will not review ineffective assistance of counsel claims based on trial strategy . . . includ[ing] the selection of evidence presented to the jury." *Sanchez-Diaz v. State*, 758 N.W.2d 843, 848 (Minn. 2008).  "[T]here are valid strategic reasons for counsel's failure to object to . . . identification evidence." *State v. Heinkel*, 322 N.W.2d 322, 326 (Minn. 1982).

Here, counsel's trial strategy was to argue that the police mistakenly identified appellant as the seller.  Appellant was identified as the seller by in-court police testimony. Counsel cross-examined the officers concerning the reliability of the show-up identification procedure, arguing that the show-up identification rendered the in-court identification untrustworthy.  Trial counsel also used the officers' narratives, including the show-up identification and the decision not to arrest appellant that night, to call into question the state's motive in pursuing the case.  Counsel vigorously maintained that the principal objective of the undercover operation was to close down Champions Bar rather than to precisely identify this particular crack-cocaine seller.  Although ultimately

9

unsuccessful, trial counsel's decision not to challenge the show-up identification was part of his trial strategy. We conclude that it did not fall below *Strickland*'s objective standard of reasonableness.

### 2. Second *Strickland* element – prejudice

Appellant's argument also fails under the second *Strickland* element, as appellant has not demonstrated prejudice. He does not argue on appeal that a successful challenge to the show-up identification would have resulted in exclusion of Officer Young's in-court identification of appellant. The district court admitted the in-court identification testimony over appellant's objection, but, on appeal, appellant fails to advance any argument that the in-court identification should have been excluded because of the earlier show-up evidence. We assume the jury believed all of the state's evidence. *Moore*, 438 N.W.2d at 108. Under these circumstances, Officer Young's in-court identification sufficed to support the jury's guilty verdict. Therefore, even if the district court had suppressed the show-up identification testimony, the trial result would doubtless have been the same.

### B. Failure to argue for a durational departure

Appellant also argues that trial counsel was ineffective for failing to argue for a durational departure from the sentencing guidelines. Appellant's trial counsel instead argued for a dispositional departure, urging the district court to place appellant on probation rather than sending him to prison.

10

### 1. First *Strickland* element – objective standard of reasonableness

"The Minnesota Sentencing Guidelines promote uniformity, proportionality, and predictability in sentencing." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). A guidelines sentence is presumed to be appropriate, and the district court must impose it absent "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1 (2014). Substantial and compelling circumstances to support a durational departure include whether the offense of conviction was significantly more or less serious than the typical conduct for that crime. *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). "[O]ffender-related factors do not support durational departures." *Id.*

Minn. Stat. § 152.023, subd. 1(1), provides that "[a] person is guilty of controlled substance crime in the third degree if . . . the person unlawfully sells one or more mixtures containing a narcotic drug." Minn. Stat. § 152.01, subds. 3a and 10, define cocaine as a narcotic drug. When the "[l]egislature's intent is clear from the statute's plain and unambiguous language," as it is here, "we interpret the statute according to its plain meaning." *Meeker v. IDS Prop. Cas. Ins. Co.*, 862 N.W.2d 43, 46 (Minn. 2015).

Here, appellant sold a $20 rock of crack cocaine. His conduct falls squarely within the plain and unambiguous language of the controlled substance crime third degree – sale statute. The pre-sentence investigation report did not identify any mitigating circumstances and recommended sentencing appellant to 51 months under the guidelines. And this was a sale of crack cocaine to a complete stranger, not a favor between friends or anything of the sort. The sale took place in a bar parking lot. There

11

was nothing remotely compelling about the circumstances that would have justified a downward durational departure. Appellant has not demonstrated that trial counsel's decision to refrain from advancing an unsupported argument for a dispositional departure amounts to objectively unreasonable representation.

### 2. Second *Strickland* element – prejudice

Appellant also fails to demonstrate that his trial counsel's decision regarding sentencing arguments prejudiced him. As discussed, there were no substantial or compelling circumstances here to support a durational departure. Although trial counsel's decision to point out offender-related factors in support of an argument for a dispositional departure was ultimately unsuccessful because of appellant's mandatory minimum sentence, appellant was sentenced at the "bottom of the box." *See State v. Turck*, 728 N.W.2d 544, 548 (Minn. App. 2007) (holding that "mandatory sentences for repeat controlled-substance offenders . . . must prevail over the provision for departures generally"). This appears to us to have been the most favorable sentence legally available to appellant under the facts of this case. The district court noted that appellant's conviction carried a mandatory minimum sentence, which precluded the court from sentencing appellant to probation. The district court then took into consideration the presumptive guideline sentence of 51 months, with a sentencing range of 44 months to 61 months. But instead of sentencing appellant to the presumptive 51 months, the district court sentenced appellant to 44 months in prison. Absent counsel's choice to argue offender-related factors, the district court may have imposed the presumptive sentence,

rather than one at the "bottom of the box." Counsel's strategic choice may well have shaved seven months off appellant's sentence.

Appellant fails to show on appeal that trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced.

## IV.    Postconviction evidentiary hearing

Appellant argues that the postconviction court erred by summarily denying his request for relief without an evidentiary hearing. We review a summary denial of a postconviction petition for an abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). A district court must hold a hearing on a postconviction petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). "An evidentiary hearing is not required unless there are material facts in dispute that must be resolved to determine the postconviction claim on its merits." *Powers v. State*, 695 N.W.2d 371, 374 (Minn. 2005). Doubts about whether an evidentiary hearing is necessary should be resolved in favor of the petitioner. *Nicks*, 831 N.W.2d at 504.

The very experienced trial judge in this case concluded that there were no disputed material facts to be resolved by an evidentiary hearing and that the record conclusively showed that appellant is not entitled to postconviction relief. We agree. Appellant sought an evidentiary hearing for the purpose of determining his trial counsel's reasons for (1) failing to challenge the show-up identification and (2) arguing in favor of a dispositional, rather than durational departure. But there are no material and disputed fact issues. As discussed, even if the evidentiary hearing had somehow demonstrated that

trial counsel's representation fell below an objective standard of reasonableness, appellant would be unable to prove that the result of the proceeding would have been different. The existing record is sufficient to demonstrate that appellant's ineffective-assistance claims fail the second element of the *Strickland* test. In short, the "record[] of the proceeding conclusively show[s] that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1.

**Affirmed.**