*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0826**

State of Minnesota,
Respondent,

vs.

Zaki Mohamed Sugule,
Appellant.

**Filed February 29, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-24105

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant argues that the district court abused its discretion by denying his motion for a downward durational sentencing departure. We affirm.

**FACTS**

On the afternoon of August 1, 2014, appellant Zaki Mohamed Sugule went to a coffee shop in Minneapolis. Sugule had been drinking alcohol since early in the day, and he was intoxicated when he arrived at the coffee shop. Noticing a group of Somali men engaged in conversation, Sugule, who is also from Somalia, tried to participate in the discussion. Because of his state of intoxication, the Somali men refused to include Sugule in their conversation, at which point Sugule became angry and threatened to harm one of the men with a drill bit that Sugule was holding. Sugule was arrested shortly thereafter, and on August 18, 2014, he was charged with one count of terroristic threats (reckless disregard) in violation of Minn. Stat. § 609.713, subd. 1 (2014).[1]

On October 1, 2014, Sugule pleaded guilty to the sole count in the complaint. Pending sentencing, Sugule was allowed to be released to a mental illness and chemical dependency treatment program. The prosecutor stated that he would "consider [recommending] probation" if Sugule made "satisfactory progress" in the treatment program. The prosecutor also stated that he would consider recommending 21 months in prison if Sugule was unable to make satisfactory progress, which would have been a downward durational departure from the presumptive guidelines sentence of 30 months.

A sentencing hearing was held on January 26, 2015. Sugule initially appeared, but after defense counsel told him that the district court was not going to consider a

---

[1] On May 12, 2015, the offense of "terroristic threats" was renamed "threats of violence." 2015 Minn. Laws ch. 21, art. 1, § 109, at 234 (amending Minn. Stat. § 609.713 (2014)). Because this change took effect after Sugule committed his offense, we refer to the offense as "terroristic threats" rather than "threats of violence."

2

probationary sentence, Sugule fled from the courtroom. On February 16, 2015, Sugule was arrested at the airport while trying to leave the country.

At the next sentencing hearing on February 18, 2015, the prosecutor argued against probation, but recommended a sentence of 21 months in prison. Defense counsel also requested that the district court sentence him to 21 months in prison. Sugule told the district court that the treatment program had shown him that he had a drinking problem and had taught him how to control his anger, which stemmed from his experiences as a youth during the civil war in Somalia. The district court acknowledged Sugule's difficult past, but stated:

> THE COURT: Okay. Well, Mr. Sugule, you're saying the right things today . . . . But I simply can't give you the same benefit of the doubt that I was prepared to do back on December 8th. Even with the . . . support of RS Eden, including the person who was in the courtroom that day as you left and told you not to leave—
> THE DEFENDANT: Yes.
> THE COURT: —you nonetheless left and you've done that in the past with regard to your 2011 fifth degree assault conviction when you absconded from supervision a couple of times according to the PSI.
> THE DEFENDANT: Yes, I understand.
> THE COURT: I was prepared to sentence you to 21 months in prison, which would have been a departure, and that was based upon the [s]tate's offer in the case initially . . . , but also based upon your acceptance of responsibility and the treatment through RS Eden. When you walked away from the courtroom that day, and because you've been basically out in the wind for the last month or so, I'm not going to give you that deal anymore.

The district court sentenced Sugule to 30 months in prison. This appeal followed.

3

**D E C I S I O N**

Sugule argues that the district court abused its discretion by denying his motion for a downward durational sentencing departure. "[Appellate courts] afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307–08 (Minn. 2014) (quotation omitted). "[Appellate courts] will not ordinarily interfere with a sentence [falling] within the presumptive sentence range, either dispositionally or durationally, even if there are grounds that would justify departure." *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) (quotation omitted). Indeed, "it would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

"Requests for durational departures require the district court to consider whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime." *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). "Caselaw is settled that offender-related factors do not support durational departures." *Id.* Thus, a district court must consider only offense-related factors when deciding a request for a durational departure.

Sugule argues that the district court abused its discretion by failing to fully consider the mitigating factors in support of a downward durational departure. First, he argues that his problems with alcohol and anger were mitigating factors that the district court gave insufficient weight. However, alcohol and anger problems are offender-based in nature and therefore are not factors a district court may consider in deciding whether to grant a durational departure. *See id.*

4

Next, Sugule argues that his acceptance of responsibility was a proper factor to justify a downward durational departure. "As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally . . . ." *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983). "However, there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984).

Sugule fails to show how his supposed remorse in any way related back to make his offense less serious. During his post-*Miranda* interview with police, Sugule denied that he threatened anyone. And, he showed a lack of remorse and an unwillingness to accept responsibility when he fled from the courthouse during his first sentencing hearing and appeared before the district court again only after being arrested at the airport. The record does not support Sugule's claim that his alleged remorse related back to the seriousness of his offense.

Sugule also argues that the district court abused its discretion by impermissibly considering his failure to appear at the January 26, 2015 sentencing hearing in its decision not to depart. Post-offense conduct is not relevant to a decision on whether to depart durationally because it does not relate to the seriousness of the offense. *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998), *review denied* (Minn. Mar. 19, 1998). It does appear that the district court improperly considered Sugule's flight from the first sentencing hearing as a reason for denying his request for a downward durational departure. But, "the district court is not required to explain its reasons for imposing a presumptive sentence."

*State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013). Moreover, there are no offense-related factors that would support a downward durational departure in this case. Therefore, the district court did not abuse its discretion by denying Sugule's motion.

   **Affirmed.**