*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1835**

State of Minnesota,
Respondent,

vs.

Bailey Jordan Garcia,
Appellant.

**Filed August 15, 2016
Affirmed; motion granted
Hooten, Judge**

Washington County District Court
File No. 82-CR-15-324

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Nicholas A. Hydukovich, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Ryan M. Pacyga, Ryan Pacyga Criminal Defense, Minneapolis, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his conviction of second-degree murder while committing a drive-by shooting, appellant argues that the district court violated his constitutional rights by denying his request for the presence of counsel at his presentence investigation (PSI)

interview and abused its discretion by denying his motion for a downward durational departure. Respondent moved to strike several documents referenced in appellant's brief and reproduced in his addendum. We affirm the conviction and grant respondent's motion to strike.

**FACTS**

In the early morning hours of January 24, 2015, appellant Bailey Jordan Garcia left his house in a vehicle, taking with him a rifle with an attached scope, a box of ammunition, and a bottle of rum.[1] Garcia went to his place of employment to retrieve a cutting tool to remove a trigger lock from the rifle. Garcia then went to a gas station, put gas in his vehicle, and covered up his license plates with paper towels. While parked near an intersection, Garcia used his rifle to fire a shot at a vehicle that happened to be at the intersection, killing the driver of the other vehicle. Garcia fled the scene.

Garcia was charged with second-degree murder while committing a drive-by shooting and pleaded guilty to the charge in May 2015. The district court ordered that a PSI report be prepared before sentencing. Shortly after Garcia entered his guilty plea, his counsel notified Washington County Community Corrections (WCCC) that he or his associate wanted to attend Garcia's PSI interview. After receiving information from WCCC that counsel would not be allowed to attend the interview, Garcia's counsel sent a letter to the district court, requesting that the district court enter an order directing WCCC to allow defense counsel to attend the interview. The district court responded by letter,

_____

[1] The facts in this paragraph are taken from the complaint.

expressing concern that Garcia's request might involve a separation of powers issue, as WCCC is part of the executive branch. The district court advised Garcia's counsel to discuss the request with WCCC "before inviting further involvement from the [c]ourt." The district court added, "Without knowing more, this [c]ourt will refrain from taking any position on the issue[] at this time."

A probation officer completed the PSI report on behalf of WCCC after interviewing Garcia for approximately two hours outside the presence of his counsel. Based on her interview with Garcia, her review of his statements to law enforcement, and the circumstances of the offense, the probation officer recommended that Garcia receive a sentence of 367 months in prison, the top of the presumptive range of sentences under the sentencing guidelines. Prior to the sentencing hearing, Garcia moved for a downward durational departure. At the sentencing hearing, Garcia's counsel objected to the fact that he was not present during the PSI interview. The district court noted that Garcia's counsel had never followed-up on his letter with a motion, but stated that the objection was preserved. The district court denied Garcia's motion for a downward durational departure, but, citing Garcia's age, mental health issues, and lack of criminal history, declined to impose the top of the box guidelines sentence that was recommended by the PSI report. The district court determined that "something more than the middle of the box" was warranted, given the "horrific" nature of the crime and the "community safety concerns" presented by Garcia, and sentenced Garcia to 324 months in prison. Garcia appealed.

The state moved to strike portions of Garcia's appellate brief and addendum as not being properly part of the record on appeal. The state's motion was deferred to this panel.

# DECISION

## I.

Garcia argues that the district court violated his constitutional rights by denying his request for the presence of his counsel during the PSI interview. Minn. R. Crim. P. 32 provides that "[r]equests to the court for an order must be by motion." A motion must set forth the relief or order sought, must set forth the grounds for relief, and must be served on each party. Minn. R. Crim. P. 32, 33.01. The letter that Garcia's counsel sent to the district court "request[ed] an [o]rder from the [c]ourt allowing [Garcia's] counsel to be present during the [PSI] interview." In support of the request, Garcia's counsel cited Minn. Stat. § 609.115 (2014) and Minn. R. Crim. P. 27.03, subd. 1(B), noting that neither of these provisions prohibits defense counsel from being present during a PSI interview. While the letter sets forth the relief sought, it does not set forth the grounds for relief, particularly the constitutional grounds for relief that he raises for the first time on appeal. We conclude that Garcia failed to bring a motion requesting an order permitting his counsel to be present at the PSI interview.

Moreover, even if the letter could be construed to be a motion, the district court never denied the motion. Rather, the district court explicitly refrained from taking any position on the issue, advised Garcia's counsel to discuss the request with WCCC, and left open the "further involvement" of the court. And, while the district court stated on the record that Garcia's objection was preserved, the district court's preservation of his objection is meaningless, as the district court made no ruling on the issue of whether Garcia was entitled to have counsel present at his PSI interview. *Cf. Quick v. Benedictine Sisters*

4

*Hosp. Ass'n*, 257 Minn. 470, 486, 102 N.W.2d 36, 47 (1960) (stating with regard to a hearsay objection that "[i]t has been held that failure of counsel to insist upon a ruling to this objection constitutes a waiver thereof"); *State v. Word*, 755 N.W.2d 776, 783 (Minn. App. 2008) (requiring a "definitive ruling" to preserve an evidentiary issue for appeal (quotation omitted)).

In any event, it is clear that Garcia did not argue to the district court, even in his letter, that his constitutional rights would be violated if his counsel were not allowed to attend the PSI interview. Because there is no indication in the record that the district court was presented with a constitutional argument regarding Garcia's right to counsel during his PSI interview and there is no indication that the district court ruled on any motion requesting an order, we decline to consider this issue. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." (quotation omitted)).

## II.

Garcia argues that the district court abused its discretion by denying his motion for a downward durational departure. Appellate courts "afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307–08 (Minn. 2014) (quotation omitted). Appellate courts "will not ordinarily interfere with a sentence falling within the presumptive sentence range, either dispositionally or durationally, even if there are grounds that would justify departure." *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006)

(alteration omitted) (quotation omitted). Indeed, "it would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

A district court may consider only offense-related factors, not offender-related factors, when deciding whether to grant a downward durational departure. *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). Essentially, when considering whether to grant a downward durational departure, a district court must consider "whether the conduct involved in the offense of conviction was significantly . . . less serious than the typical conduct for that crime." *Id.*

Garcia argues that the district court abused its discretion by failing to consider the mitigating factors that supported his motion for a downward dispositional departure. First, Garcia contends that his documented medical conditions of depression and alcohol use disorder "played a significant role in his commission of the offense" and therefore distinguish his criminal act from the typical drive-by shooting. The Minnesota Sentencing Guidelines list a defendant's lack of "substantial capacity for judgment when the offense was committed" as a mitigating factor. Minn. Sent. Guidelines 2.D.3.a.(3) (2014). However, the sentencing guidelines also provide that "[t]he voluntary use of intoxicants (drugs or alcohol) does not fall within the purview of this factor." *Id.* While Garcia cites his history of depression and alcohol use disorder, he does not argue that he lacked substantial capacity for judgment at the time he committed the offense. And, although Garcia argues that his depression and his alcohol use disorder played a significant role in the commission of the offense, he cites no authority supporting the proposition that the mere existence of a defendant's medical conditions, without proof that the defendant lacked

6

substantial capacity for judgment at the time of the offense, renders an offense less serious. Rather, Garcia's depression and alcohol use disorder are offender-based factors, which may not be taken into consideration when deciding whether to grant a durational departure. *See Peter*, 825 N.W.2d at 130.

Next, Garcia argues that the district court abused its discretion by refusing to depart because his offense was not a typical drive-by shooting. Garcia argues that the legislature enacted the drive-by shooting statute to curb shootings where the offender knew the victim, fired multiples shots into a crowded area, and was motivated by revenge, and contends that his offense does not fit these characteristics. Garcia cites no authority indicating that a court should review legislative history when evaluating whether an offense is less serious than the typical offense of that kind. Garcia presents no other argument regarding why his offense was less serious than the typical offense, and there does not appear to be any evidence demonstrating that his offense was less serious than the typical offense. Rather, the complaint indicates that Garcia took a rifle with an attached scope, a box of ammunition, and a bottle of rum from his house and drove to his place of employment to get an instrument that would allow him to remove the trigger lock attached to the rifle. He covered up the license plates of his vehicle with paper towels. While parked near an intersection, Garcia, for no apparent reason, aimed his rifle at a vehicle that happened to be at the intersection and fired a shot, killing the driver of that vehicle. These facts indicate that Garcia planned the crime, carried it out independently, killed an innocent passerby, and fled the scene. The offense committed by Garcia is no way any less egregious than the

7

typical murder by drive-by shooting.  We conclude that the district court did not abuse its discretion by denying Garcia's motion for a downward durational departure.

## III.

The state moved to strike certain portions of Garcia's brief and addendum as pertaining to matters outside the record on appeal, and the motion was deferred to this panel.  Specifically, the state moved to strike (1) Garcia's inclusion of information from the Diagnostic and Statistical Manual of Mental Disorders and the National Institute on Alcohol Abuse and Alcoholism regarding alcohol use disorder, (2) a quotation from a book regarding Garcia's "spiritual understanding of depression," and (3) an article regarding murder rates in Minneapolis in 1996 that was referenced in support of Garcia's argument regarding the legislative history of the drive-by shooting statute.  Because none of these materials were part of the district court record, we grant the state's motion to strike.  *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn. App. 1992) ("The court will strike documents included in a party's brief that are not part of the appellate record."), *aff'd*, 504 N.W.2d 758 (Minn. 1993).

**Affirmed; motion granted.**