**STATE of Minnesota, Respondent,**

v.

**Kua VANG, Appellant.**

**No. C4-01-288.**

Court of Appeals of Minnesota.

Nov. 20, 2001.

---

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Richard J. Dusterhoft, Assistant County Attorney, St. Paul, MN, for respondent.

John H. Stuart, State Public Defender, Cathryn Y. Middlebrook, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HANSON, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

R.A. RANDALL, Judge.

This is an appeal from a conviction of third-degree controlled-substance offense. Appellant argues that a police officer, along with a probation officer assigned to supervise appellant's son, unlawfully entered appellant's home without a warrant to perform a home visit of appellant's son. Appellant argues that the district court erred in finding consent was given to enter the home, and that if consent was given or implied, the consent did not authorize unannounced entry into appellant's bedroom and therefore the evidence obtained from that search is fruit of the poisoned tree and should be suppressed. We affirm.

## FACTS

Appellant Kua Vang was arrested in his home for possession of opium after a probation officer visiting appellant's son, D.V., approached appellant's bedroom and, through an open door, observed Vang smoking opium.

Appellant's son, D.V., was put on probation for assault in February 1999. The district court ordered that his matter be referred to the Ramsey County Community Corrections Department for probation supervision and that he was "to follow all the recommendations of probation." The district court gave the Ramsey County Community Human Services Department temporary legal custody of D.V. In August 1999, the Corrections Department placed D.V. on enhanced probation, which occurs when the probationer is a gang member and has a drug charge or violent offense. D.V. and his mother signed the conditions of probation form for enhanced probation, which involved more frequent visits from a probation officer who is often accompanied by a police officer.[1] D.V.'s probation officer is Long Khang. Khang visited the Vang residence and D.V.'s school approximately 30 to 40 times over a four-month period.

On January 6, 2000, Khang and police officer Ghnia Kong went to the Vang home to speak with D.V. about a fight involving D.V. that occurred in early December 1999. Khang testified at the omnibus

---

1. A police officer accompanying the probation officer is necessary for heightened safety of the probation officer when the probationer committed a violent crime as a gang member.

hearing that he and Kong knocked on the duplex's main entry, and D.V. answered the door. D.V. opened the exterior door and then walked into the apartment. Khang and Kong followed D.V. through the door to the apartment, which lead into the living room.[2] Khang spoke with D.V. about the December incident, and D.V. admitted to the assault. Khang determined that this was a violation of D.V.'s probation and decided to take him into custody for 24–hour detention.

Khang testified that he heard D.V.'s parents talking in the other room, so he went into the kitchen through the open doorway to talk to them, and while standing in front of appellant's open bedroom door, he observed appellant smoking opium. He asked D.V.'s parents to come into the living room so he could tell them he was taking D.V. to detention. When Khang returned to the living room, he told Kong that appellant was smoking opium in the bedroom. Appellant immediately came out to the living room and said to Kong, without any prompting, that he was smoking opium because he had a stomachache. He turned around and said, "I show you," and brought Kong back to his bedroom where Kong saw the drug paraphernalia. Appellant then handed Kong a metal box containing a black solid substance and brown and black paste, saying, "This is what I was smoking." Kong arrested appellant.

The black solid was analyzed and found to be a mixture containing codeine, morphine, acetylcodeine, and monoacetylmorphine, weighing 24.3 grams. The brown and black paste also contained morphine and codeine. Appellant was charged with third-degree violation of controlled-substance law, possession of more than 10 grams of a mixture containing morphine and codeine under Minn.Stat. § 152.023, subd. 2(2) (1998).

Appellant challenged the admissibility of the evidence against him at a suppression hearing on the ground that the evidence was obtained through a warrantless search of appellant's home. The district court ruled that the evidence was admissible and denied appellant's motion to suppress. Appellant waived his right to a jury trial and submitted the case to the court on stipulated facts, pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn.1980). The district court found appellant guilty of the charged crime. Appellant now challenges his conviction.

## ISSUE

I. Did the district court err in finding that appellant's son gave consent for the probation officer and police officer to enter appellant's home?

II. Did the probation officer's observations of appellant in his bedroom violate appellant's Fourth Amendment rights?

## ANALYSIS

Appellant contends that Khang and Kong entered the Vang residence and appellant's bedroom without a warrant, consent, or any other lawful reason. He claims that the observations and evidence collected regarding appellant's charge for possession of a controlled substance should therefore be suppressed.

■ When reviewing pretrial suppression orders, the appellate court independently reviews the facts and determines, as a matter of law, whether the district

---

2. Kong's testimony differed in that he said they entered through the side entry into the kitchen. In either case, the analysis of this case does not change, as explained in footnote 3.

court erred in its decision. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

■ "Under the fourth amendment, warrantless searches and seizures are *per se* unreasonable unless they fall under an established exception." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn.1992) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Consent and exigent circumstances are two of the recognized exceptions. *Id.* If no exception applies, then the fruits of the warrantless search must be suppressed. *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963)).

## I. Consent to Enter Appellant's Home

■ "When a search is conducted pursuant to consent however, neither probable cause nor a warrant is required." *State v. Pilot*, 595 N.W.2d 511, 519 (Minn. 1999) (citation omitted). The defendant need not be the one who consents to the search; rather, consent "may be given by another party who possesses *common authority* over or other sufficient relationship to the premises." *Id.* (alteration in original) (quotations omitted). Voluntariness of consent is determined by the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224–27, 93 S.Ct. 2041, 2046–48, 36 L.Ed.2d 854 (1973) (analyzing determination of voluntary consent); *State v. Howard*, 373 N.W.2d 596, 599 (Minn. 1985) (stating district court should determine validity of consent based on all relevant circumstances).

■ Here, Khang visited the Vang residence on numerous occasions with a police officer. Past experience showed them that when D.V. or his parents answered the door, they were invited in either verbally or nonverbally. On January 6, 2000, D.V. answered the door, turned around and went into his apartment. Such conduct reasonably implies that Khang and Kong were supposed to follow D.V. into the apartment. In the past, Khang was never asked to wait outside or told that he was not welcome. This time was no different. D.V. opened the door for them, led them into the apartment and did not protest the visit in any way. The record supports the district court's conclusion that Khang and Kong received consent to enter appellant's residence.

## II. Observations of Appellant's Bedroom

■ Once Khang spoke with D.V. and determined that he violated his probation and that D.V. should be taken into custody for 24 hours, Khang needed to inform D.V.'s parents that he was taking D.V. into immediate custody. *See* Minn.Stat. § 260B.176, subd. 1 (Supp.2000) (stating parents shall be notified as soon as possible when child is taken into custody under section 260B.175 (2000)). Khang heard D.V.'s parents in the other room near the kitchen, walked through the open entrance to the kitchen, and toward the room in which he heard D.V.'s parents. These were reasonable actions by Khang. The bedroom door was wide open, and Khang observed D.V.'s parents sitting on the bed and appellant smoking opium.[3] Khang testified that he had not smelled the opium until he was looking through the doorway into the bedroom. Khang observed the illegal activity while he was attempting to

---

**3.** Based on Kong's testimony regarding entry into the kitchen, Khang would still have made the same observations when he approached the bedroom door. Standing near the outside door to the kitchen would not have allowed view into the bedroom because the direction of the bedroom door opening blocked the view from that angle. However, Kong did not dispute whether Khang could have seen the illegal activity in plain view when Khang approached the open bedroom door.

comply with the statute. Nothing was obstructing his view from the kitchen; the door to the bedroom was not shut.

The Minnesota Supreme Court has stated that

> evidence seized without a valid search warrant is nevertheless admissible if it is in plain view, there was a prior justification for an intrusion, the discovery was inadvertent, and there was probable cause to believe that the items seized were immediately apparent evidence of crime.

*State v. Bradford,* 618 N.W.2d 782, 795 (Minn.2000) (quotation omitted).

 Here, Khang had justification for the entry into the home and to be in a position to see through the open door of appellant's bedroom. D.V. consented to Khang and Kong entering the home. Khang was at appellant's home to check on his probationer and discuss a possible probation violation and then needed to inform D.V.'s parents that he was being taken into immediate custody after he determined that D.V. violated his enhanced probation. Because the county was given temporary legal custody of D.V., the county had the requisite authority to impose "enhanced conditions of probation." [4] Further, what Khang discovered was inadvertent as he walked through an open doorway into the kitchen and toward the open bedroom door to tell appellant and D.V.'s mother that he was taking D.V. into custody. Khang did not intentionally seek out the illegal activity, the evidence seized from appellant was admittedly illegal drugs, and appellant freely told Kong that it was opium.

We conclude that Khang's observations of illegal activity were not a violation of appellant's Fourth Amendment rights. Appellant was not coerced by Kong to admit and to show him that he was smoking opium. We affirm the district court's decision that the evidence seized was not the fruit of an illegal search and is, therefore, admissible.

## DECISION

The district court did not err in finding appellant's son gave consent for his probation officer and police officer to enter appellant's residence. And because the probation officer's presence in the kitchen was justified, he did not violate the appellant's Fourth Amendment rights when he observed appellant through appellant's open bedroom door.

**Affirmed.**

---

4. We note that it would have been better for the county to go to the district court to obtain validation for the enhanced probation. That would have solidified the basis for a violation of probation. Probation conditions generally are set by the court. *State v. Henderson,* 527 N.W.2d 827, 829 (Minn.1995). While the county did have temporary custody of D.V., a serious change in the conditions of probation (i.e., enhanced probation) should have been brought to the district court's attention to clarify the county's rights and scope of enforcement.