*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1952**

State of Minnesota,
Respondent,

vs.

Nathan John Reynolds,
Appellant

**Filed November 16, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-13-4059

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer K. Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Nathan John Reynolds appeals his conviction, challenging the district court's denial of his motion to suppress evidence. He also appeals the district court's denial of

his motion for a downward dispositional sentencing departure. Because the district court properly admitted Reynolds's statements following his arrest, we affirm the conviction. Because the district court did not abuse its broad discretion in sentencing Reynolds to the 144-month presumptive sentence, we affirm the denial of Reynolds's sentencing motion.

**FACTS**

This case arose when West Saint Paul police learned that O.L., the ten-year-old daughter of Reynolds's former live-in girlfriend, alleged that Reynolds had sexually abused her. O.L. disclosed to a social worker that sometime between January and July 2013, Reynolds touched her vagina with his hands, mouth, and penis. O.L. also stated that Reynolds had masturbated in front of her. She said the sexual contact occurred while she and her mother lived with Reynolds in West Saint Paul.

West Saint Paul Investigators Casey Kohn and Michael Eberlien developed probable cause to believe Reynolds committed the offenses against O.L. Relying on probable cause to conduct a warrantless arrest, the investigators went to Reynolds's home to arrest him on December 12, 2013. Reynolds's current girlfriend, J.T., who was then pregnant with Reynolds's child, answered the door.

The parties dispute whether J.T. consented to the investigators' entry. According to Investigator Eberlien's omnibus hearing testimony, J.T. expressly invited them in. Investigator Kohn testified that J.T. allowed them to enter the house. J.T. testified that, while the officers did not push her out of the way to enter, they stepped inside without invitation.

2

Once inside, Investigators Kohn and Eberlien arrested Reynolds, allowed him to dress for the cold, and then escorted him to the police station for questioning. After receiving *Miranda* warnings, Reynolds agreed to speak with Investigator Eberlien and admitted to twice having oral sexual contact with O.L.'s vagina.

The state charged Reynolds with one count of first-degree criminal sexual conduct. *See* Minn. Stat. § 609.342, subd. 1(a) (2014) (sexual penetration with a person under 13, by a defendant more than 36 months older than the complainant). Reynolds moved to suppress his statements to police following the arrest, arguing that they resulted from a nonconsensual entry into his home. At a contested omnibus hearing, Investigator Kohn, Investigator Eberlien, and J.T. testified about the circumstances of Reynolds's arrest.

The district court denied Reynolds's suppression motion, finding that the investigators' testimony that they were given consent to enter was credible. The court found that J.T.'s conduct—leaving the door open and stepping back while calling for Reynolds—amounted to an invitation to enter the home, which the investigators reasonably understood as consent.[1]

Reynolds agreed to a stipulated-facts trial under Minnesota Rule of Criminal Procedure 26.01, subdivision 3, and he validly waived his jury-trial rights. The district court convicted Reynolds, finding that the stipulated exhibits and Reynolds's admissions

---

[1] The district court additionally reasoned that J.T.'s testimony that she neither gave the investigators permission to enter nor invited them in may have been motivated by a desire to assist Reynolds, the father of her unborn child.

established the offense beyond a reasonable doubt. Before sentencing, the district court ordered presentence and psychosexual evaluations.

Reynolds moved for a downward dispositional departure, arguing that he was particularly amenable to probation. At the sentencing hearing, the district court confirmed that it had reviewed all materials pertinent to sentencing, including the presentence investigation report, the psychosexual evaluation, and the letters of support submitted on Reynolds's behalf. Citing concern for Reynolds's coping skills,[2] the district court denied Reynolds's sentencing motion and sentenced him to the presumptive sentence of 144 months.

Reynolds appeals.

**D E C I S I O N**

**I.       Suppression Motion**

Reynolds argues that the district court erred by denying the motion to suppress his statements given at the police station following his arrest. He contends that because police entered his home without consent, his arrest was unconstitutional and his later statements should have been suppressed. We disagree.

On appeal from the denial of a pretrial suppression motion, we review the district court's factual findings for clear error and its legal determinations de novo. *State v. Lemieux*, 726 N.W.2d 783, 787 (Minn. 2007); *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with

---

[2] The presentence investigation report notes that Reynolds's sex offender treatment therapist opined that he does not know how to effectively cope with stress and anxiety.

the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846–47 (Minn. 2011).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless entry into a constitutionally protected area, such as one's home, is "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980); *State v. Thompson*, 578 N.W.2d 734, 740 (Minn. 1998). Any evidence obtained as the result of an unreasonable search must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 416 (1963).

Valid consent is an exception to the warrant requirement. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992); *State v. Howard*, 373 N.W.2d 596, 599 (Minn. 1985) (noting that the consent necessary under *Payton*, is "consent to enter, not consent to arrest"). Consent may be given verbally or implied by nonverbal actions. *Othoudt*, 482 N.W.2d at 222. It must be voluntarily given and may not merely result from acquiescence to authority. *Howard*, 373 N.W.2d at 599. The voluntariness of a party's consent is a factual inquiry that considers "all relevant circumstances." *Othoudt*, 482 N.W.2d at 222 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047–48 (1973)).

Neither party disputes that J.T. had actual authority to consent to the investigators' entry. Instead, the parties disagree about whether J.T. did, in fact, consent. Reynolds argues that J.T.'s act of stepping back with her hand on the door as she called for Reynolds did not imply consent. But gestures and actions that are reasonably understood

5

to invite entry objectively imply consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 185–86, 110 S. Ct. 2793, 2800 (1990) (reiterating that factual determinations made by police need not always be correct, but must always be reasonable); *State v. Vang*, 636 N.W.2d 329, 333 (Minn. App. 2001) (finding that appellant's son's habit of answering the door, leaving the first door ajar, and retreating into the home implied his consent).

The contested omnibus testimony illustrates that each investigator independently understood from J.T.'s conduct that she had either invited them in or, at minimum, allowed them to come inside on that December morning. Reynolds does not contest the investigators' description of J.T.'s conduct, and the district court found their testimony to be credible. "We defer to the trier of fact on credibility assessments and reverse only if the trier has committed clear error." *State v. Doren*, 654 N.W.2d 137, 141 (Minn. App. 2002).

The record supports the district court's finding that the investigators reasonably understood J.T.'s conduct to imply consent to enter. Because valid consent is an exception to the warrant requirement, Reynolds's statements following the investigators' warrantless entry were admissible.

**II.    Sentencing Motion**

Reynolds argues that the district court abused its discretion by denying his motion for a downward dispositional departure because he expressed remorse and was amenable to probation. We are not persuaded by this contention.

This court affords a district court "great discretion in the imposition of sentences and reverse[s] sentencing decisions only for an abuse of that discretion." *State v. Soto*,

855 N.W.2d 303, 307–08 (Minn. 2014) (quotation omitted). The district court exercises its discretion by "deliberately considering circumstances for and against departure." *State v. Mendoza*, 638 N.W.2d 480, 483 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002). Only in a "rare case" will this court reverse a district court's imposition of the presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

A district court must impose a presumptive sentence unless substantial and compelling circumstances exist. *Soto*, 855 N.W.2d at 308. A sentencing court may depart "*only* if aggravating or mitigating circumstances are present." *Id.* (quotation omitted). "Although the [district] court is required to give reasons for departure, an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985). This court "may not interfere with the sentencing court's exercise of discretion, as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *Id.* at 80–81.

Reynolds argues that the imposition of the presumptive 144-month sentence was an abuse of discretion because he demonstrated a particular amenability to probation. He claims that several factors show his particular amenability to probation: his lack of a criminal record, his remorse, his cooperative behavior with police, his respectful behavior in court, and eight letters of support from friends and family. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (outlining relevant factors that support a probationary sentence, such as the defendant's age, prior record, remorse, cooperation, attitude while in court, and friend and family support). He also highlights that he voluntarily enrolled in

and paid for sex-offender treatment, that he has been employed throughout the pendency of his case, and that he remains current on his child-support payments.

The sentencing guidelines state that neither employment status nor marital status should be used as a reason for a sentencing departure. Minn. Sent. Guidelines 2.D.2 & cmt. 2.D.201 ("Employment is excluded as a reason for departure not only because of its correlation with race and income levels, but also because this factor is manipulable—e.g., offenders could lessen the severity of the sentence by obtaining employment between arrest and sentencing.").

Reynolds correctly asserts that the remaining factors are relevant to his particular amenability to probation. But neither the presence of some mitigating factors nor evidence of amenability to probation *mandates* a dispositional departure. *See State v. Olson*, 765 N.W.2d 662, 663–65 (Minn. App. 2009) (holding that a district court does not abuse its discretion by refusing to depart "from a presumptively executed prison sentence, even if there is evidence in the record that the defendant would be amenable to probation").

The sentencing hearing transcript shows that the district court deliberately considered circumstances for and against departure before exercising its discretion. The district court stated that it had reviewed each of the documents pertinent to sentencing and expressed concern for the details emphasized in Reynolds's presentence investigation report, particularly his weak coping skills.

Reynolds also argues that, because he sought treatment and expressed remorse, he was an atypical offender and should fall within the twenty-five percent of cases

warranting a dispositional departure. The district court had broad discretion to consider this argument, and this court will not interfere with the district court's decision not to credit this contention.

Given the depth of the district court's deliberation and consideration, we conclude that it did not abuse its discretion when it denied Reynolds's sentencing motion. *See State v. Pegel*, 795 N.W.2d 251, 254–55 (Minn. App. 2011) (holding that the district court properly exercised its discretion by not departing where the record showed that it considered all circumstances).

**Affirmed.**